## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: Farmers Insurance Co., Inc., | ) | Western Dist. Case No. CIV-03-158-F |
| FCRA Litigation, | ) | |
| | ) | MDL No. 1564 |
| Judge Friot | ) | |
| | ) | **This document relates to Corl, Watts** |
| | ) | **& Mobbs** |

## O R D E R

Before the court is Plaintiffs' Opposed Motion for Class Certification, filed September 22, 2005 (doc. no. 524) ("Motion"). The issues have been fully briefed, and the matter is ripe for determination. Defendants previously requested oral argument in regard to plaintiffs' motion, which the court denied without prejudice to reassertion at a later date. *See*, Order filed December 5, 2005 (doc. no. 549). Upon review of all of the parties' submissions, the court concludes that oral argument is not necessary.

Background

Plaintiffs, Harry Corl, Cynthia L. Hodnett, Nyle Cearlock, Arlene Hancock, David L. Watts, Jr. and Donna S. Mobbs, individually and on behalf of all others similarly situated, have sued defendants, Farmers Insurance Company, Inc., Farmers Group, Inc., Farmers Insurance Exchange, Fire Underwriters Association, Fire Insurance Exchange and Mid-Century Insurance Company, seeking to recover statutory damages, costs and attorneys' fees based upon defendants' alleged willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.[1]  In

---

[1]Plaintiff Mobbs filed suit in this judicial district. Plaintiffs Corl, Hodnett, Cearlock and Hancock filed suit in the Eastern District of Arkansas. Watts filed suit in the Western District of
(continued...)

their Consolidated and Amended Class Action Complaint, plaintiffs allege that defendants have instituted a corporate policy of obtaining consumer report information as to their applicants and insureds for the purpose of insurance underwriting.  *See*, Plaintiffs' Consolidated and Amended Class Action Complaint, filed January 24, 2005 (doc. no. 493) ("Amended Complaint"), ¶ 73.   They additionally allege that defendants took adverse action against each plaintiff and each class member, based in whole or in part on information obtained from consumer reports, but did not provide adequate notice of the adverse action to each plaintiff and each class member as required by the FCRA.[2]  *Id*. at ¶ 74.  They further allege that

---

[1](...continued)

Arkansas.  The Arkansas civil actions, along with similarly filed civil actions in other judicial districts, were transferred by the Judicial Panel on Multidistrict Litigation to this court for pretrial purposes.  On January 6, 2005, plaintiffs Corl, Hodnett, Cearlock, Hancock, Watts and Mobbs, the only remaining plaintiffs after voluntary dismissals by all other plaintiffs, sought leave to file an amended complaint to effectively consolidate the transferred actions.  The court granted such leave, and on January 24, 2005, plaintiffs Corl, Hodnett, Cearlock, Hancock, Watts and Mobbs filed their Consolidated and Amended Class Action Complaint.

[2]Section 1681m of Title 15 of the United States Code provides in pertinent part:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall–
>
> (1) provide oral, written, or electronic notice of the adverse action to the consumer;
>
> (2) provide to the consumer orally, in writing, or electronically–
>
>> (A) the name, address and telephone number of the consumer reporting agency . . . that furnished the report to the person; and
>>
>> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and

(continued...)

defendants' decision not to provide adequate adverse action notice to each plaintiff and each class member was willful and deliberate.[3]  *Id*. at ¶ 75.  Plaintiffs and class members "seek statutory penalties from $100 - $1000 per violation for Defendants' willful violation of the FCRA, and seek to recover costs and their attorneys' fees." *Id*. at ¶ 81.

In the Motion, plaintiffs seek certification of a national class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  Specifically, plaintiffs seek to certify the following class:

---

[2](...continued)
> (3) provide to the consumer an oral, written, or electronic notice of the consumer's right–
>
>> (A) To obtain . . . a free copy of a consumer report on the consumer from the consumer reporting agency . . . which notice shall include an indication of the 60-day period . . .for obtaining such a copy; and
>>
>> (B) to dispute . . . with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

[3]Section 1681n(a) of Title 15 of the United States Code provides in pertinent part:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of–
>
>> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 . . .
>>
>> * * * *
>>
>> (2) such amount of punitive damages as the court may allow; and
>>
>> (3) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

All persons who received, renewed, and/or purchased auto and/or homeowners insurance from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange and were charged more than the lowest premium available for such insurance based in whole or in part on information contained in a consumer report, and who, upon initial receipt or renewal of the policy, received from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange's form designated as follows:

25-7535 (version dated 6-00); or

25-7581 (version dated 9-00); or

25-7585 (version dated 9-00).

Excluded from the class are: (1) Defendants and all directors, officers, agents and employees of Defendants; (2) claims by any person or entity who timely opts out of this proceeding; (3) all currently serving federal district court judges, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such federal district court judges and spouses; and (4) any person who has given a valid release concerning the claims asserted in this suit.[4]

Legal Standard

The standard for certifying a class action appears in Fed. R. Civ. P. 23. Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir. 1988).  Initially, the district court

---

[4]In their Amended Complaint as well as in their Motion, plaintiffs include in the definition of the proposed class, those persons who "received no FCRA 'adverse action' notice." *See*, Amended Complaint, ¶ 56, Motion, p.1.  However, in their response to the class certification motion, defendants represent that "Farmers' records reflect that for all insureds with credit histories, an adverse-action notice was sent to such insureds if they did not receive the largest premium discount based in whole or in part on credit information." *See*, Defendants' Opposition to Plaintiffs' Motion for Class Certification, filed November 3, 2005 (doc. no. 531), pp. 43-44.   Based upon this representation, plaintiffs expressly concede, in their reply brief, that "no-notice" class members should be removed from the class definition. *See*, Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion, filed November 21, 2005 (doc. no. 546), pp. 18-19.   The court analyzes the proposed class on that narrower basis.

must determine whether the four threshold requirements of Rule 23(a) are met.  *Id.*  Although plaintiffs bear the burden of proving that these requirements are satisfied, *see*, <u>Reed v. Bowen</u>, 849 F.2d 1307, 1309 (10th Cir. 1988), the district court must engage in its own "rigorous analysis" to decide whether these requirements are indeed met.  *See*, <u>General Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982) (class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.")  The four threshold requirements of Rule 23(a) are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The first two requirements of Rule 23(a) focus on the characteristics of the class; the second two requirements focus instead on the desired characteristics of the class representatives.  1 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 3:13, pp. 316-317 (4th ed. 2002).

If the court determines that the four prerequisites of Rule 23(a) are satisfied, "'it must then examine whether the action falls within one of the three categories of suits set forth in Rule 23(b).'"  <u>Shook v. El Paso County</u>, 386 F.3d 963, 971 (10th Cir. 2004) (quoting <u>Adamson</u>, 855 F.2d at 675), *cert. denied*, 125 S.Ct. 1869 (2005).  As stated above, plaintiffs seek certification of a class action under Rule 23(b)(3).  Before a class action can be certified under Rule 23(b)(3), it is necessary for the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); <u>Monreal v. Potter</u>, 367 F.3d 1224, 1237 (10th Cir. 2004).

"[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising [plaintiffs'] cause of action.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978) (quoting Merchantile Nat. Bank v. Langdeau, 371 U.S. 555, 558 (1963)).  However, at the same time, Rule 23 does not authorize the district court to inquire into the merits of plaintiffs' suit or to permit any such inquiry to influence the decision on class certification.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

Whether to grant or deny certification of a class action under Rule 23 lies within the broad discretion of the district court.  Reed, 849 F.2d at 1309.  The decision necessarily entails weighing the practical and prudential considerations raised by the facts unique to each case.  Id.  In making a class determination, the courts have erred in favor of certification since the decision is not set in stone, but is subject to later modification.  Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968), cert denied, 394 U.S. 928 (1969).

Fed. R. Civ. P. 23(a) requirements

Rule 23(a)(1) - Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs estimate the proposed class to be more than one million policyholders scattered throughout all fifty states. See, Motion, p. 18, ("[I]t is undisputed that Defendants sent one of the form notices in question to more than one million policyholders/class members scattered throughout all fifty states."), see also Ex. DD to Motion.  Although there is no magic number of members which would require class certification, classes of more than forty members have been deemed to satisfy the numerosity requirement.  Horn v. Associated Wholesale Grocers, Inc., 555 F.2d 270, 275 (10th Cir. 1977) (class of forty-six plaintiffs sufficient to warrant class certification).  In evaluating numerosity, the

court may also consider whether the proposed class members are geographically dispersed. <u>Zeidman v. J. Ray McDermott & Co.,</u> 651 F.2d 1030, 1038 (5th Cir. 1981). Defendants do not challenge plaintiffs' estimate of the proposed class.[5]  The court finds that joinder of more than a million class members residing throughout the United States would be impracticable.  The court therefore concludes that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

Rule 23(a)(2) - Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In order to satisfy this requirement, plaintiffs need not show that *all* questions of law and fact are common to the class.  1 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 3:11, pp. 292-294 (4th ed. 2002).  The test for meeting the commonality requirement is qualitative rather than quantitative.  Plaintiffs need only show a single issue common to all members of the class.  1 Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 3:10, pp. 272-273 (4th ed. 2002); <u>J.B. ex rel. Hart v. Valdez</u>, 186 F.3d 1280, 1288 (10th Cir. 1999).  The core allegation in this case is that defendants willfully violated the FCRA by failing to provide proper notice of adverse action[6] due to information obtained from consumer reports.  In centralizing the various lawsuits before this court, the Judicial Panel on Multidistrict Litigation found that the lawsuits "involve common questions of fact" and also involve the same claimed statutory violations.  <u>In re Farmers Ins. Co.,</u>

---

[5]Indeed, in their briefing, defendants state that "[t]aking plaintiffs' proposed class definition and applying it to the states in which Farmers Insurance Company, Inc. operates–Arkansas, Iowa, Kansas, Missouri and Oklahoma–plaintiffs' proposed class encompasses over 5.5 million notices sent to Farmers insureds . . . ." *See*, Defendants' Opposition to Plaintiffs' Motion for Class Certification, filed November 3, 2005 (doc. no. 531), p. 27.

[6]The term "adverse action" is defined in 15 U.S.C. § 1681a(k)(1)(B)(i) as "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance."

Inc., Ins. Premiums Litig., 295 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003). The court agrees with plaintiffs that the same common issues of law and fact which linked the plaintiffs for purposes of centralization (whether the notices complied with the FCRA and whether defendants' conduct was willful) also now link the plaintiffs to the proposed class members for purposes of class certification. The court finds that there are questions of law and fact common to all members of the proposed class and that the commonality requirement of Rule 23(a)(2) has been satisfied.[7]

Rule 23(a)(3) - Typicality and Rule 23(a)(4) -Adequacy

The third and fourth requirements of Rule 23(a) are that the claims of the representative parties must be "typical of the claims . . . of the class," *see*, Fed. R. Civ. P. 23(a)(3), and that the representative parties must "fairly and adequately protect the interests of the class," *see*, Fed. R. Civ. P. 23(a)(4).

The purpose of the typicality requirement is to assure the interest of the named class representative aligns with the interests of the class. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the nature of the claim of the class representative and not to the specific facts from which it arose or to the relief sought. *Id*. Factual differences will not render a claim atypical if the claim is based upon the same legal or remedial theory and arises from the same events or course of conduct. Adamson, 855 F.2d at 676; Edgington v. R. G. Dickinson and Co., 139 F.R.D. 183, 189 (D. Kan. 1991).

As to the adequacy requirement, two questions must be resolved: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class

---

[7]Defendants, in their briefing, do not address the commonality requirement, citing district court cases within the Tenth Circuit which have held that the predominance requirement of Rule 23(b) subsumes the commonality standard of Rule 23(a). *See, e.g.,* Meyers v. Sw. Bell Tel. Co., 181 F.R.D. 499, 501 (W.D. Okla. 1997). The court acknowledges those rulings but has decided to treat the commonality requirement separately.

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?  Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-1188 (10th Cir. 2002).

There is a clearly an overlap between typicality and adequacy requirements. Courts have concluded that if the representative party's claims are not typical of the class, the representative party cannot adequately protect the interests of the absent class members.  Meyers v. Sw. Bell Tel. Co., 181 F.R.D. 499, 501 (W.D. Okla. 1997). However, satisfaction of the typicality test does not automatically mean that adequacy of representation is present.  1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions,  § 3:22, p. 412 (4th ed. 2002).  A representative party may have a typical claim but otherwise have a conflict with the class unrelated to that typical claim or may not be able to demonstrate able counsel who will vigorously prosecute the litigation on behalf of the class.  Id.

Absence of Membership in Proposed Class

Defendants argue that plaintiffs, Corl, Hodnett and Mobbs, cannot satisfy the typicality or adequacy requirements because they are not members of the proposed class.  See, General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (quoting East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). Specifically, defendants assert that these plaintiffs did not receive one of the three notices identified in the class definition.  While plaintiffs, in reply, attempt to show that plaintiff Hodnett is within the proposed class by stating that she "also had auto coverage" and "would have received several of the notices listed in plaintiffs proposed class definition from January 1, 2001 until sometime after August, 2002," see, Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Class

Certification ("Reply Brief"), filed November 21, 2005 (doc. no. 546), p. 15, plaintiffs fail to present any evidence with the Reply Brief that plaintiff Hodnett received one of the three challenged notices. In addition, they fail to present any evidence to show that plaintiffs Corl and Mobbs received one of the three challenged notices. The declarations of plaintiffs, Corl, Hodnett and Mobbs, submitted in support of the Motion, do not reveal that they received any of the challenged notices. *See*, Ex. II, Ex. JJ, & Ex. NN of Motion. Such failure, however, is not fatal to class certification. "[I]f the action is brought by . . . several representative parties, it only is necessary that one of them be a qualified member of the class as long as the other prerequisites of Rule 23(a) are satisfied." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1761, p. 163 (3d ed. 2005). The court agrees with plaintiffs that defendants have not disputed that plaintiffs Hancock, Cearlock and Watts received one of the three identified notices. Therefore, there are three proposed class representatives who undisputedly come within the proposed class definition and are members of the class.[8] [9]

---

[8]In deciding plaintiffs' Motion, the court is not to adjudicate whether plaintiffs have stated a cause of action or whether plaintiffs will prevail on the merits. Shook, 386 F.3d at 971. If the evidence does in fact reveal that plaintiffs, Corl, Hodnett and Mobbs, did not receive any of the notices within the class description and cannot be members of the class of which they purport to represent, the court presumes the parties will file a stipulation of dismissal or defendants will file the appropriate motion to address the matter.

[9]In their briefing, defendants assert that it is likely plaintiff Watts will be excluded from the proposed class definition, which excludes any individual who has "'given a valid release concerning the claims asserted in this suit or who claims in this suit have been validly released.'" *See*, Opposition Brief, p. 35. Defendants represent that a settlement was reached between Farmers and the State of Texas in December of 2002 and the settlement released all Texas citizens' FCRA claims against Farmers, which would include any claims of Mr. Watts. *Id*. at 35-36. However, defendants also represent that the trial court's approval of the settlement was reversed by the Texas Court of Appeals and Farmers has appealed that decision to the Texas Supreme Court. *Id*. at 36. Plaintiffs do not address defendants' assertion. Until a settlement, binding on Watts, is approved and it appears that in fact that plaintiff Watts is excluded from the class, the court declines to find the claim of plaintiff Watts is not typical of the class and that he is not an adequate representative. The court
(continued...)

Unique Defense Against Named Plaintiffs

Defendants, however, also argue that plaintiffs, Cearlock, Watts and Hancock, cannot satisfy the typicality and adequacy requirements because they are subject to a unique defense that will likely play a major role in the litigation. *See*, *e.g.*, Gary Plastic Packaging Corp. v. Merrill, Lynch, Inc., 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the issue is framed in terms of typicality of the representative's claims, or the adequacy of its representation, there is a danger that absent members will suffer if their representation is preoccupied with defenses unique to it.") (internal citations omitted), *cert. denied*, 498 U.S. 1025 (1991). According to defendants, the evidence reveals that plaintiffs, Cearlock, Watts and Hancock, in addition to receiving written adverse action notices, received oral adverse action notices from their insurance agents. Defendants maintain that the FCRA specifically permits notification of an adverse action either orally or in writing. Because plaintiffs' claims are subject to a unique defense, defendants contend that their claims are not typical of the class and plaintiffs cannot adequately represent the class.

Several courts have determined that "'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" Hanon, 976 F.2d at 508 (quoting Gary Plastic Packaging Corp., 903 F.2d at 180); *see also*, Koos v. First National Bank of Peoria, 496 F.2d 1162, 1164-65 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.") The fear is that the named plaintiff will become distracted by the presence of an arguable unique

---

[9](...continued)

presumes the parties will file a stipulation of dismissal or defendants will file the appropriate motion to address this matter if the settlement is finally approved and plaintiff Watts is excluded from the class.

defense so that the presentation of the rest of the class will suffer.  J. H. Cohn & Co. v. American Appraisal Assoc., Inc., 628 F.2d 994, 999 (7th Cir. 1980).  "A representative should not be permitted to impose such a disadvantage on the class." Koos, 496 F.2d at 1165.  However, the unique defense rule "is intended to protect the plaintiff class–not to shield defendants from a potentially meritorious suit."  Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200 (S.D.N.Y. 1992).  A class representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members. Trief, 144 F.R.D. at 201.  Indeed, it is well established that the "mere existence of individualized factual questions with respect to the class representative's claim will not bar certification."  Id. (quoting Gary Plastic Packaging Corp., 903 F.2d at 180.)

Initially, the court notes that while defendants argue that the alleged oral adverse action notice defense is unique to plaintiffs, Cearlock, Watts and Hancock, they also argue that the defense may apply to "numerous" potential class members. See, Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opposition Brief"), filed November 3, 2005 (doc. no. 531), p. 12.  In their briefing, defendants state that "Farmers insurance agents regularly communicated with proposed class members and notified them if they did not receive the best credit discount based on their credit information."  Id. at p. 9; see also, Response to Plaintiffs' Motion to Supplement Evidence in Support of Their Motion for Class Certification by Defendants, filed January 10, 2006 (doc. no. 559), p. 2.  Defendants also state that "[n]umerous [ ] potential class members had discussions with their agents when their premiums increased based in whole or in part on credit information . . . ." Opposition Brief, at 12; see also, Defendants' Supplemental Response in Opposition to Plaintiffs' Motion for Class Certification, filed December 5, 2005 (doc. no. 550), p. 2 ("Communications between class members and their insurance agents concerning

Farmers use of credit information in setting policy premiums . . . were systematic.")
Furthermore, defendants challenge class certification under Rule 23(b)(3) on the basis
that the oral adverse action notice defense will predominate over the common issues
in this case, thereby precluding class certification under Rule 23(b)(3).  *Id*. at p. 9-16.
Therefore, it does not appear that the alleged defense is one unique to plaintiffs,
Cearlock, Watts and Hancock, or even to a small subset of the class.  Koos, 496 F.2d
at 1164.

Even assuming that defendants' suggestion that the defense is unique to these
named plaintiffs is true, the court concludes that class certification should not be
denied on the basis of the unique defense rule.  Although the court is not inclined to
delve into the merits of the alleged oral adverse action notice defense, and a decision
as to its validity awaits another day, the court cannot say on the record before it that
it is "predictable" or "likely" that this defense will dominate this litigation.  The major
focus of this litigation will be whether the written adverse action notices (which
defendants concede they sent to all insureds or applicants when an adverse action was
taken based in whole or in part on credit information)[10] violated the FCRA.  This issue
will apply to the named plaintiffs and all class members.  The purported oral adverse
action notice defense will not come into play until it is determined that the written
adverse action notices were deficient under the FCRA.  Hence, the court is not
convinced that the oral adverse action notice defense will distract the named plaintiffs
from the major focus of the litigation, thereby imposing a disadvantage on the class.
Furthermore, the court would note that defendants have not cited authority definitively

---

[10]According to defendants, "Farmers' records reflect that for all insureds with credit histories,
an adverse-action notice was sent to such insureds if they did not receive the largest premium
discount based in whole or in part on credit information."  *See*, Opposition Brief, pp. 43-44.  In
addition, they state: "Farmers' computer systems are programmed to automatically send an insured
an adverse-action notice if [ ] credit information is used in determining the insured's premium and
he or she does not receive the lowest possible premium."  *Id*. at 32-33.

supporting their position that a deficient written notice of adverse action may be supplemented orally by their independent insurance agents and that the oral supplementation need not occur "contemporaneously" or "immediately" with the taking of the adverse action.[11]   The court also would note that the record evidence does not reveal that plaintiffs, Watts, Cearlock or Hancock, received oral notice of adverse action during the time period when defendants utilized the three adverse action notice forms specified in the proposed class definition.   The court anticipates that the factual and legal merits of the oral adverse action notice defense will be an issue raised in summary judgment proceedings and the existence of that defense will be established at that time.   The court at this stage concludes that defendants' purported unique defense does not result in a failure of plaintiffs, Cearlock, Watts and Hancock, to satisfy the typicality or adequacy requirements.[12]   The court, however, advises the parties that the court "reserves the right to alter or amend its decision in

---

[11]*But see*, Carroll v. Exxon Co., U.S.A., 434 F. Supp. 557, 560 (E.D. La. 1977) ("The language of [the FCRA] clearly requires such disclosure [of adverse action] *contemporaneously* upon notification of the denial of credit.") (emphasis added); *see also*, Conf. Rep. No. 91-1587, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News, pp. 4394, 4416 ("The House amendment . . . deleted the requirement in § 615(a) [1681m(a)] that the consumer be required to submit a written request after denial of . . . insurance . . . to obtain the name and address of the consumer reporting agency making the report.  The conference substitute now requires the user . . . to convey this information to the consumer *immediately* upon denial of . . . insurance . . . .") (emphasis added); H.R. 15073, 91st Cong., 2d Sess., 116 Cong. Rec. 36571 (1970) (statement of Rep. Sullivan) ("The House conferees succeeded in assuring *immediate* notification to any individual, who is rejected for . . . insurance . . . because of information in a credit report . . . .  Thus, his right to access to his file is made more meaningful – he will *automatically* be told where to look for information which may be causing him needless harm.") (emphasis added); Braxton v. Farmers Insurance Group, 209 F.R.D. 654, 657 (N.D. Ala. 2002) (citing 16 C.F.R. § 601 App. C "'Users must notify consumers *when adverse actions are taken.*'" (emphasis in original).   (In quoting legislative history, including statements by individual Members, the court does not suggest that those sources should, or will, be given decisive effect when the court reaches the merits of the matter.)

[12]The court concludes that the typicality requirement of Rule 23(a)(3) has been met as the named plaintiffs and the class allege claims for violations of the FCRA.  The alleged violations are based upon the same alleged statutory violations.

the light of the record as it then exists before a final adjudication of the case on the merits." Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532, 539 (E.D. N.C. 1995).

Conflict of Interest Between Named Plaintiffs and Proposed Class Members

Defendants also contend that plaintiffs, Cearlock, Watts and Hancock, do not satisfy the adequacy requirement due to the existence of a conflict of interest between plaintiffs and the proposed class members. This conflict of interest, defendants argue, is based upon plaintiffs' attempt to certify a class action that limits the class recovery to statutory damages. Under 15 U.S.C. § 1681n, a party may recover actual damages or statutory damages (of not less than $100 and not more than $1,000) for a willful violation of the FCRA. Defendants assert that plaintiffs have limited their requested class relief to statutory damages in order to avoid class certification hurdles inherent in seeking actual damages. Defendants argue that while plaintiffs may waive their right to seek actual damages, they may not do so on behalf of potential class members. Defendants contend that plaintiffs' efforts to limit the requested relief to statutory damages may jeopardize the remaining class members' rights to seek actual damages in a subsequent case. Defendants contend that the opportunity of class members to opt out of the class under Fed. R. Civ. P. 23(c) does not eliminate the potential conflict of interest.

The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalty to absent class members. See, e.g. In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785, 796 (3d Cir. 1995). However, in order for a conflict of interest to render a named class representative an inadequate class representative, the conflict must be more than merely speculative or hypothetical. 5 James WM. Moore, Moore's Federal Practice,

§ 23.25[2][b][ii] (3d. ed. 2005). There must be a showing that the conflict is a real probability. Robertson v. National Basketball Ass'n, 389 F. Supp. 867, 899 (S.D.N.Y. 1975). No such showing exists from the record before the court. The court acknowledges the implications of claim preclusion and also recognizes that the proposed class is in excess of a million persons. But there is nothing before the court to show that there are any proposed class members who have actual damages in excess of $1,000. There is no showing in the record that the election of statutory damages as a remedy by the named plaintiffs would not benefit the majority, if not all, of the members of the class. In addition, the court notes that three district courts have certified classes alleging violations of the FCRA where the named plaintiffs have exclusively sought statutory damages. White v. Imperial Adjustment Corp., 2002 WL 1809084 (E.D.La. August 6, 2002); Ashby v. Farmers Insurance Co. of Oregon, 2004 WL 2359968 (D. Or. October 18, 2004); and Braxton v. Farmer's Insurance Group, 209 F.R.D. 654 (N.D. Ala. 2002), aff'd, 91 Fed. Appx. 656 (Table) (11th Cir. June 13, 2003). Moreover, the Seventh Circuit, in Murray v. GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006), recently reversed a district court's denial of class certification in a FCRA case based in part on a finding of inadequate representation because no actual damages for any proposed class members had been sought. The court stated:

> Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification. When a few class members' injuries prove to be substantial, they may opt out and litigate independently. Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether.

*Id.* at 953 (citations omitted).  Here, as stated, there is nothing before the court to show that there are class members with actual damages in excess of the requested statutory damages.  If a few class members' injuries are substantial, they may opt out and litigate independently.  *Id.*  The court cannot say that the interests of the named plaintiffs are antagonistic to, and not in alignment with, the class members due to their choice of remedy in this case.  The court finds that the named plaintiffs are fair and adequate representatives for the proposed class.  The court concludes that plaintiffs have satisfied the adequacy requirement of Rule 23(a)(4).[13]

Fed. R. Civ. P. 23(b)(3) requirements

Predominance

Rule 23(b)(3) has two requirements: predominance and superiority. The predominance requirement is similar to but "far more demanding" than the commonality requirement of Rule 23(a). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).  While commonality requires the presence of common questions of law and fact, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.*  For the predominance requirement to be met, plaintiffs' claims must stem from a "common nucleus of operative facts" and not have "material variations in elements." *See*, Meyers v. Southwestern Bell Telephone Co., 181 F.R.D. 499, 502 (W.D. Okla. 1997); Edgington, 139 F.R.D. at 191.

---

[13]In their briefing, defendants have not challenged the experience or competence of class counsel.  The court concludes that the named plaintiffs have shown that they and their counsel will vigorously prosecute this action on behalf of the class.

Oral Adverse Action Notice

Defendants argue that plaintiffs cannot satisfy the predominance requirement because there are "significant, material variations that apply to each individual class member's claim." *See*, Opposition Brief, p. 9. Defendants acknowledge that plaintiffs are challenging three standardized written adverse action notices as violating the FCRA. Defendants, however, maintain that the FCRA permits not only written notice of adverse action, but also oral notice of adverse action. As previously discussed, defendants contend that their independent insurance agents had a regular business practice of providing oral notice of adverse action to their customers. Defendants assert that the insurance agents routinely informed their customers that credit information was used in determining their premiums and also informed their customers if they did not receive the best premium discount based in part on their credit information. Defendants argue that this oral notice of adverse action by their insurance agents will eliminate their liability under the FCRA. However, defendants further assert that establishing or refuting oral adverse action notice by the insurance agents will require individualized evidence and testimony from each insurance agent and each class member. Therefore, defendants contend that resolution of the individualized issue of oral adverse action notice will predominate over the common issue of whether the challenged written notices of adverse action violated the FCRA.

In the court's view, the purported individualized issue of oral adverse action notice does not undermine class cohesion in this case. The court is not to consider the merits in determining the propriety of class certification. Eisen, 417 U.S. at 177. However, as previously noted, defendants cite no authority to support their argument that a deficient written notice of adverse action may be supplemented orally by their independent insurance agents and that the oral supplementation need not occur "contemporaneously" or "immediately" with the taking of the adverse action. In

addition, the evidence before the court does not reveal that the named plaintiffs or the class members received oral notice of adverse action during the time period when defendants utilized the three adverse action notice forms within the class definition. As did the court in <u>Braxton v. Farmers Insurance Group</u>, the court finds that the oral adverse action notice defense is speculative. <u>Braxton</u>, 209 F.R.D. at 661. By definition, the class is limited to those to whom written notice was sent. Where, as here, the adequacy of the *written* notice – which a reasonable consumer would understandably regard as the definitive means of communication of important information relating to his or her personal finances – is seriously in issue, the court is reluctant to permit the entire course of this action to turn, at this stage of the proceedings, on potentially ephemeral issues as to the factual and legal effect of a telephone call from an agent to a class member who has received a formal written notice on the same subject as that of the hypothetical phone call. At this point, the court cannot say that common issues as to liability cannot be determined on a classwide basis. The court, however, "reserves the right to alter or amend its decision in the light of the record as it then exists before a final adjudication of the case on the merits." <u>Rodger</u>, 160 F.R.D. at 539. The court therefore concludes that common issues relating to defendants' alleged deficient written adverse action notices and defendants' alleged willful conduct[14] will predominate over the individual issue raised by defendants in regard to oral adverse action notices by independent insurance agents.

---

[14]In their briefing, defendants state that evidence of communications between the independent insurance agents and customers will also be admissible as to the issue of willfulness. According to defendants, once the court accepts the admissibility of this evidence for "any" purpose, trying the case as a class action will be unmanageable. *See*, Opposition Brief, p. 14. Again, defendants do not have any authority to support the admissibility of this evidence on the issue of willfulness. Therefore, the admissibility of the evidence is pure speculation at this point.

<u>Amount of Statutory Damages</u>

Defendants contend that another individualized issue in this case is whether each individual class member can prove the existence and amount of any statutory damages.   According to defendants, the statutory damages provided in § 1681n ("damages of not less than $100 and not more than $1,000") are compensatory damages.   As compensatory damages, any award must be based upon plaintiff's injury, not defendants' conduct.   Thus, defendants assert that for the fact finder to determine what compensatory damages should be awarded to each class member, plaintiffs must present evidence of damages suffered by each class member. Defendants contend that, without such evidence, an award of compensatory damages would be arbitrary and potentially grossly disproportionate to any actual damages suffered.   Because any award of statutory damages will require the presentation of individualized evidence as to each class member, defendants maintain that the issue of statutory damages will predominate over the common issues in this case.

Contrary to defendants' assertion, the recovery of statutory damages under the FCRA is not dependent on proof of injury or harm.   <u>Murray v. New Cingular Wireless Services, Inc.</u>, 232 F.R.D. 295, 302 (N.D. Ill. 2005); <u>White</u>, 2002 WL 1809084 at *15. Therefore, plaintiffs are not required to present individualized proof of injury from each class member to obtain an award of statutory damages.   *Id*.   Because individualized proof of injury is not required, the court finds that plaintiffs satisfy the predominance requirement, despite the request for statutory damages for defendants' alleged violation of the FCRA.[15]

---

[15]In their briefing, defendants rely upon <u>In re Trans Union Corp. Privacy Litigation,</u> 211 F.R.D. 328 (N.D. Ill. 2002), for support of their position that the statutory damages are compensatory damages and require proof of plaintiffs' injury.   While the court in <u>Trans Union</u> concludes that the statutory damage provision acts as compensation, *see, id*. at 342, it does not conclude that in order to recover statutory damages, plaintiffs are required to present proof of injury or harm.

Superiority

The second requirement for certification of the class under Rule 23(b)(3) is superiority. This requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Defendants contend that the a class action is not a superior method of enforcement because the FCRA provides sufficient incentive for the prosecution of individual claims and the aggregate amount of statutory damages is grossly disproportionate to any actual damages suffered as a result of defendants' alleged misconduct. In support of their contention, defendants cite to Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. 1972) and its progeny. In Ratner, the district court denied class certification of an action brought by a plaintiff seeking minimum statutory damages of $100, plus costs and a reasonable attorney's fee, under the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. § 1640(e), for "failure to show a "'nominal annual percentage rate'" on a periodic statement reporting an outstanding principal balance but no interest charge yet accrued." Id. at 413. The number of proposed class members was estimated at "as many as 130,000" and the minimum recovery was "$13,000,000." Id. at 414. The plaintiff sought to certify the class under Rule 23(b)(1) and Rule 23(b)(3). The court declined to certify a class under either subdivision. In denying certification under Rule 23(b)(3), the court stated:

> Students of the Rule have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature. Appealing to that kind of judgment, defendant points out that (1) the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be horrendous, possibly annihilating punishment, unrelated to any

damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive. They are summarized compendiously in the overall conclusion stated earlier: the allowance of this as a class action is essentially inconsistent with the specific remedy supplied by Congress and employed by plaintiff in this case. It is not fairly possible in the circumstances of this case to find the (b)(3) form of class action "superior to" this specifically "available [method] for the fair and efficient adjudication of the controversy."

*Id.* at 416 (footnote omitted).

Defendants contend that the factors in <u>Ratner</u> are present in this case. Plaintiffs are seeking statutory damages between $100 and $1,000 and no actual damages. Plaintiffs seek to certify an enormous class (over a million) with the potential for an annihilating damages award. As previously noted, defendants represent that in the five states in which defendant, Farmers Insurance Company, Inc., operates, "plaintiffs' proposed class encompasses over 5.5 million notices sent to Farmers insureds." And according to defendants, the "potential statutory range [would be] from $550 million to $5.5 billion, exclusive of punitive damages." *See*, Opposition Brief, p. 27. Defendants therefore urge the court to follow the reasoning in <u>Ratner</u> and find that a class action is not superior to the statutory method of individual recoveries.

Guided by careful consideration of the facts of this case, the court declines to follow <u>Ratner</u>. The court concludes that allowance of a class action in this case is not "inconsistent" with the specific remedy supplied by Congress. After the ruling in <u>Ratner</u>, the United States Supreme Court specifically determined that class relief is available for any claim unless Congress expressly limits such relief. <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700 (1979) ("[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the [Federal] Rules [of Civil Procedure] established for that purpose, class relief is appropriate in civil actions brought in federal court. . . ."); 2 Herbert B.

Newberg & Alba Conte, <u>Newberg on Class Actions</u>, §4.43, p. 332 (4th ed. 2002). Therefore, under the authority of <u>Califano</u>, class relief is available for all claims, including minimum statutory damage claims, assuming there is no clear expression of congressional intent to exempt the claims from Rule 23. *Id.* There is no express restriction of class relief as to plaintiffs' claims under the FCRA.

In addition, despite the incentive of attorney fees available under the FCRA, the court concludes that the potential de minimis recovery does not provide sufficient incentive for an individual to bring a solo action to prosecute the individual's rights under the FCRA.[16] In the court's view, a class action is the best way to resolve the claims of the purported class particularly where, as here, defendants have engaged in standardized conduct affecting numerous consumers geographically dispersed and a consumer's potential recovery is most likely too small to justify the bringing of an individual action. Class action certification enables consumers to share in a financial recovery which they might not otherwise have pursued on their own behalf. And unlike the court in <u>Ratner</u>, this court does not conclude that the violation asserted in this case is, if it occurred at all, a "technical" violation. The court agrees with the court in <u>Ashby</u>, 2004 WL 2359968, at *8, that a willful violation of the FCRA is more than a technical violation. Furthermore, the court does not perceive, at this juncture, any insurmountable difficulties in managing a class action. Indeed, compliance with the notice requirements of Rule 23 should not pose a problem as defendants have records identifying the insureds to whom it sent the alleged deficient written adverse action notices.

---

[16]"'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" <u>Amchem</u>, 521 U.S. at 617 (quoting <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344 (1997)).

As to the potential for annihilating damages, the court notes that the record does not establish that the statutory damages sought by plaintiffs (should they prevail) would be a crushing or fatal blow for defendants.  In addition, the court notes that the potential for large damages is due to the size of the class and that the size of the class is not a fortuity (as might be true in, say, a mass casualty case)  – it is essentially a function of the scale of the defendants' insurance business.  A finding that the class action is not superior because damages are large, due to the large number of affected individuals, would invite defendants to violate the law on a grand scale. 1 Herbert B. Newburg & Alba Conte, <u>Newberg on Class Actions</u>, § 4.43, p 331 (4th ed. 2002).  In addition, the United States Supreme Court in <u>Reiter v. Sontone Corp.</u>, 442 U.S. 330, 344-345 (1979) (another decision after <u>Ratner</u>), rejected an argument to deny class action relief under the Clayton Act because "the cost of defending consumer class actions will have a potentially ruinous effect on small businesses in particular and will ultimately be paid by consumers in any event," stating that these "policy considerations [are] more properly addressed to Congress than to this Court." Furthermore, courts have concluded that the fact that a damage award may implicate due process concerns is not a reason to prevent certification.  Such effect can be nullified through reduction of the award.  *See*, <u>Parker v. Time Warner Entertainment Co.</u>, 331 F.3d 13, 22 (2d Cir. 2003) ("[I]n a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.); *see also*, <u>Murray</u>, 434 F.3d at 954 ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.") (internal citation omitted).  The court therefore declines to conclude that a class action is not superior under the principles announced in <u>Ratner</u>.

The court notes that defendants also cite to the district court cases of <u>Murray v. GMAC Mortgage Corp.</u>, 2005 WL 3019412 (N.D. Ill. November 8, 2005), <u>Anderson</u>

v. Capital One Bank, 224 F.R.D. 444 (W.D. Wis. 2004), Sampson v. Western Sierra Acceptance Corp., 2004 WL 406992 (N.D. Ill. February 27, 2004), In re Trans Union Corp. Privacy Litigation, 211 F.R.D. 328 (N.D. Ill. 2002), all FCRA cases wherein the courts found that a class action was not a superior method of adjudication because the potential damage award was disproportionate to the harm caused.  However, as previously discussed, the Seventh Circuit reversed the district court's denial of class certification in Murray.  See, Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006).  The court, per Judge Easterbrook, rejected the district court's conclusion that the potential of a substantial damage award was a proper ground to deny class certification.  In so doing, the court stated:

> The reason that damages can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A), combined with [defendant's] decision to obtain the credit scores of more than a million persons.

> Many laws that authorize statutory damages also limit the aggregate award to any class . . . The Fair Credit Reporting Act is in the cap-free group.

>  . . . Maybe suits such as this will lead Congress to amend the Fair Credit Reporting Act; maybe not.  While a statute remains on the books, however, it must be enforced rather than subverted. An award that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), but constitutional limits are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it.

*Id.* at 953-954. On the issue of whether the Ratner principles should be applied in this case, the district court cases cited by the defendants are not as persuasive to this court as they are to the defendants.[17]

Defendants have cited a Tenth Circuit case and a district court case from this judicial district approving and applying the Ratner principles in denying class certification in TILA actions. *See*, Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973) (affirming district court's application of Ratner principles in denying class certification); Umdenstock v. Am. Mortgage & Inv. Co. of Oklahoma City, 363 F. Supp. 1375 (W.D. Okla. 1973) (denying TILA class action based upon Ratner principles). The Wilcox decision is the only one that is precedential authority. However, the court notes that the Tenth Circuit was reviewing the district court's denial of class certification following the Ratner principles under an abuse of discretion standard. The court does not conclude that Wilcox, which was decided prior to Califano and Reiter and which was based upon an abuse of discretion standard, would require the application of the Ratner principles in this case. For the reasons previously stated, the court does not find the Ratner reasoning to be persuasive. The court is persuaded that class treatment will provide the fairest and most efficient adjudication of the alleged violations of the FCRA. The court concludes that the superiority requirement of Rule 23(b)(3) is satisfied.

---

[17]In its decision to deny class certification, the Trans Union court noted that the FCRA provided for regulation and enforcement by the Federal Trade Commission, which had resulted in a cease and desist order against defendant halting much of the practices attacked by plaintiffs and that "'any uniformed victims' who have suffered no actual economic damage, have been and continue to be protected by the FTC's enforcement of the statute and regulations." Trans Union, 211 F.R.D. at 351. The court concluded "that regulation by the FTC, coupled with individual actions for damages (and attorney fees), is superior to a class action for statutory damages by tens of millions of consumers who claim no actual economic loss." *Id.* Here, there is no FTC cease and desist order. Therefore, there is no protection by the FTC of uninformed victims as to defendants' alleged misconduct, unlike the circumstances in Trans Union.

Proposed Class Definition

Inaccuracies and Ambiguities

Defendants argue that plaintiffs' proposed class definition contains several inaccuracies and ambiguities. First, the definition uses the term "persons" rather than "consumers" or "individuals." Defendants assert that the FCRA only requires adverse action notice be given to a consumer and it defines the term "consumer" as an "individual." *See*, 15 U.S.C. § 1681a(c). Defendants therefore contend that the class definition should only encompass consumers or individuals, not persons. Second, the class definition seek to include all persons who "received" insurance. Defendants assert that the term "received" is overbroad as well as ambiguous because it is unclear what "received" means. According to defendants, the FCRA adverse action notice provisions apply to individuals who suffer adverse action based in part on credit information. These notice provisions, defendants assert, would apply to an individual who purchases or renews insurance and was charged more than would otherwise have been charged, based in part on the credit information. Defendants contend that it is unclear who could be a class member on the basis of receiving insurance but not on the basis of purchasing or renewing insurance. Lastly, defendants contend that plaintiffs' class definition misstates defendants' practice of using credit information, by referring to the "lowest premium available." Defendants maintain that their program of using credit information was a discount-based system. Defendants state that each insured was charged the same base premium of insurance and then discounts were taken off that base premium. One such discount, according to defendants, would be a discount for a person's credit risk assessment score. Defendants state that individuals who had the best credit risk assessment scores received the largest discounts.

Plaintiffs do not address these specific challenges to their proposed class definition. The court concludes that defendants' challenges do have merit. The court will modify the class definition to account for these particular challenges.

Standing

Defendants also object to the proposed class definition to the extent that it seeks to assert FRCA claims against Fire Insurance Exchange ("FIE") and Mid-Century Insurance Company ("MCIC"). Defendants assert that none of the named plaintiffs were insureds of these two companies. Because none of the plaintiffs have an injury traceable to FIE or MCIC (that FIE or MCIC took adverse action against them based in whole or in part on credit information without adequate notice), defendants argue that plaintiffs have no standing to assert the FCRA claims against these two companies and cannot serve as representatives of the class in regard to the FCRA claims against them. Therefore, defendants contend that Fire Insurance Exchange and Mid-Century Insurance Company must be deleted from the class definition.

Plaintiffs, in reply, concede that they do not have standing to represent the insureds from FIE and MCIC in asserting claims based upon FIE and MCIC's independent wrongful conduct.[18] However, citing Reynolds v. Hartford Financial Services Group, Inc., 416 F.3d 1097 (9th Cir. 2005), plaintiffs contend that they do have standing to prosecute the claims possessed by FIE and MCIC insureds against defendant, Farmers Group, Inc., which, in its capacity as agent and management company for all defendant Farmer entities (including FIE and MCIC), created the specific adverse action notices at issue in the litigation; made the rating decisions

---

[18]In their reply, plaintiffs state that prior to the class certification hearing, plaintiffs will either move to dismiss their claims as against FIE and MCIC or seek leave to join additional class representatives who were insured by such companies and therefore do have standing to assert direct claims against them. See, Reply Brief, p. 20, n. 18. Although no class certification hearing has been held, plaintiffs have not to date made any further attempts to either dismiss the claims or seek to join additional class representatives.

about which insureds would be adversely affected by the use of credit information; made the decision as to which insureds the notices would be mailed and prepared and mailed the notices to the insureds. *See*, Reply Brief, p. 19. According to plaintiffs, the insureds of FIE and MCIC suffered the harm alleged to have been caused through the conduct of defendant, Farmers Group, Inc., and the plaintiffs suffered identical harm. Plaintiffs contend that they seek to represent similarly situated class members asserting claims against defendant, Farmers Group, Inc., and "the class definition utilizes the names of the [defendant] insurance companies in order to define the members of the class and to describe that class's composition, *i.e.*, "'all insureds of . . . .'" *Id*. at p. 20.

Although defendants have filed a supplemental response to plaintiffs' reply, defendants have not addressed plaintiffs' standing argument or the <u>Reynolds</u> decision. The court notes that the <u>Reynolds</u> decision was superseded and withdrawn by <u>Reynolds v. Hartford Financial Services Group, Inc.</u>, 2005 WL 2416126 (9th Cir. 2005), which was amended and superseded by <u>Reynolds v. Hartford Financial Services Group, Inc.</u>, 426 F.3d 1020 (9th Cir. 2005), which was withdrawn and superseded by <u>Reynolds v. Hartford Financial Services Group, Inc.</u>, 435 F.3d 1081 (9th Cir. 2006). The latest opinion of the Ninth Circuit, however, still holds that "when a customer applies for insurance with a family of companies and is charged a higher rate for insurance because of his credit report, two or more companies within that family may be jointly and severally liable. The notice requirement applies to any company that makes a decision that a higher rate shall be imposed, issues a policy at a higher rate, or refuses to provide a policy at a lower rate, if the company's action is based in whole or in part on the consumer's credit information." *See*, <u>Reynolds</u>, 435 F.3d at 1085. Based upon the <u>Reynolds</u> decision, the court agrees with plaintiffs that they have standing to represent the insureds of FIE and MCIC as to injuries arising, at least in part, from the conduct of defendant Farmers Group, Inc.. However, prior to

publication of any class notice, it will be necessary to dismiss the claims against FIE and MCIC based upon their independent conduct unless insureds of FIE and MCIC have been joined to serve as representatives for the FIE and MCIC insureds in asserting the FCRA claims against FIE and MCIC.

Conclusion

Because the court concludes that plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(3), the court finds that Plaintiffs' Opposed Motion for Class Certification, filed September 22, 2005 (doc. no. 524) should be and is hereby **GRANTED**.

Pursuant to Fed. R. Civ. P. 23(c)(1)(C), the court's certification decision may be altered or amended, and should circumstances warrant, the court may, at a later time and upon proper motion, alter or amend its decision. The court hereby certifies the following class:

> All individual consumers who renewed or purchased auto or homeowners insurance from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange and did not receive the largest credit discount for such insurance based in whole or in part on information contained in a consumer report, and who received from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange's form designated as follows:
>
> 25-7535 (version dated 6-00); or
>
> 25-7581 (version dated 9-00); or
>
> 25-7585 (version dated 9-00).
>
> Excluded from the class are: (1) Defendants and all directors, officers, agents and employees of Defendants; (2) claims by any person or entity who timely opts out of this proceeding; (3) all currently serving federal district court judges, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such federal

-30-

district court judges and spouses; and (4) any person who has given a valid release concerning the claims asserted in this suit.

The court expects that plaintiffs will promptly file motions proposing the form of a class action notice and addressing other procedural matters incident to the prompt and fair resolution of the matters entrusted to this court for pretrial proceedings.

Dated this 13th day of April, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

Farmers MDL p091 (PUB).wpd