### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: Farmers Insurance Co., Inc. FCRA litigation | ) Western Dist. Case No. CIV-03-158-F ) ) MDL No. 1564 |
| Judge Friot | ) ) ) **This document relates to Braxton** |

## ORDER

Before the court are Plaintiffs' Motion for Partial Summary Judgment (doc. no. 590) and Defendant's Motion for Summary Judgment (doc. no. 597).

Standard of Review

Under Rule 56(c), Fed. R. Civ. P., summary judgment shall be granted if the record shows that, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Relevant Facts and Procedural Background

In October 2001, defendant, Fire Insurance Exchange, applied for and received approval for revised rates for homeowners insurance policies. Defendant's rating

program included numerous factors relevant to the determination of an insured's homeowners insurance premium, including base premiums for the insured's territory, the insured's loss history, the value of the insured's home, changes in coverage, protection class, and other discounts for smoke detectors and alarm systems. Defendant's rating program also utilized insurance bureau scores, which were calculated from a proprietary mathematical risk model developed by Fair Isaac Corporation, that used consumer report information obtained from Trans Union LLC, a consumer credit reporting agency. The insurance bureau scores were converted to a letter score that corresponded with a discount from the premium base rate.

As a condition of approval for the revised rates, the Alabama Deputy Commissioner of Insurance directed defendant to send a letter to each of its insureds whose rates were expected to increase by fifty percent or more. The letter was to be sent sixty days in advance of the next renewal date. The purpose of the letter was to give policyholders notice of the rate increase so they would have time to shop for other coverage if they chose. Defendant determined that approximately 25 percent of its policyholders in Alabama fell into this category. Defendant complied with the commissioner's directive, sending the letter to each of its insureds who were expected to have a premium increase of fifty percent or more, approximately 60 days before their renewal date.[1]

---

[1] The letter stated in pertinent part:

> Unfortunately, severe storm losses in Alabama and increasing costs of construction have created upward pressure on our Homeowners insurance rates. As such, we have no other choice but to increase premiums in order to protect the value of Farmers' promise to "*get you back where you belong*" after a loss.
>
> You will be receiving your Homeowners insurance renewal notice shortly. This notice will reflect a renewal premium which is at least

On November 1, 2001, defendant sent the subject letter to plaintiff, Mike Braxton. The letter did not contain any information required by section 615(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(a).[2]

On November 18, 2001, more than forty-five days in advance of plaintiff's policy renewal date, defendant mailed plaintiff a homeowners policy renewal packet.

---

> 50% higher than your current premium. We are informing you of this situation now in order to provide you with as much advance notice as possible.

Ex. 20, plaintiffs' motion (emphasis in original).

[2] Section 1681m(a) provides in pertinent part:

> If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall --
>
> (1) provide . . . written . . . notice of the adverse action to the consumer;
> (2) provide to the consumer . . . in writing . . .
>    (A) the name, address, and telephone number of the consumer reporting agency . . . that furnished the report to the person; and
>    (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
> (3) provide to the consumer . . . written . . . notice of the consumer's right --
>    (A) to obtain . . . a free copy of a consumer report on the consumer from the consumer reporting agency . . .
>    (B) to dispute . . . with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

3

The packet included a premium statement. It also included a notice sent pursuant to § 1681m(a) entitled "Fair Credit Reporting Act Notification." The notice stated in pertinent part:

> To underwrite your policy, various consumer reports were used. These reports provide information to assist with risk evaluation and risk placement. Your premiums were also determined, in part, from the information contained in these reports. A consumer report was furnished by [Trans Union] at our request for insurance underwriting purposes.

Ex. 22, plaintiffs' motion. The notice also advised that (1) the source of the consumer information was Trans Union; (2) Trans Union could be contacted by the means and at the locations stated; (3) Trans Union did not make the decision regarding the policy; (4) the insured was entitled to receive a free copy of the credit report from Trans Union during a period of 60 days following receipt of the notice; (5) the insured had the right to dispute any inaccurate information in the report; and, (6) the insured was encouraged to call a Farmers agent if there were any questions. *Id*.

In November or December of 2001, plaintiff suspected that defendant had accessed his consumer information in setting his renewal premium. Before his January 9, 2002 renewal date, plaintiff purchased a homeowners policy from another company with the same coverage and for a much lower premium.

In December 2001, plaintiff commenced a class action in the Northern District of Alabama, Eastern Division, seeking relief against defendant[3] for violation of the FCRA. Plaintiff alleged that defendant negligently or willfully violated FCRA by failing to include an FCRA notice in the November 1, 2001 letter informing him of the fifty percent premium increase. Plaintiff filed a Second Amended Complaint on

---

[3] Farmers Insurance Group was originally named as defendant. Plaintiff filed an amendment on January 7, 2002 to correctly name Fire Insurance Exchange as defendant.

June 13, 2002. Subsequently, on September 16, 2002, the court entered a memorandum of opinion, Braxton v. Farmer's Ins. Group, 209 F.R.D. 654 (N.D. Ala. 2002), certifying the following class:

> All persons who were residents of Alabama during the time period from October 16, 2001, to the present who were subjected to adverse actions in conjunction with the renewal of their policies of homeowners' insurance issued by Fire Insurance Exchange based in whole or part on information contained in their consumer credit reports and who received letters stating that their premiums would be increased by 50% or more that did not include contemporaneous notices in compliance with 15 U.S.C. § 1681m(a).

*Id*. at 663. That decision was appealed to the Eleventh Circuit Court of Appeals. The decision was affirmed and the mandate was issued on July 14, 2003. Prior to and during the appeal, defendant filed a motion for summary judgment and plaintiff, individually and on behalf of the class, filed a motion for partial summary judgment. After the appeal was concluded, plaintiff filed a second amended motion for class certification, as to which defendant moved to dismiss or to strike. On July 12, 2004, the Judicial Panel on Multidistrict Litigation transferred the case to this court, pursuant to 28 U.S.C. § 1407, for inclusion in coordinated or consolidated pretrial proceedings in Case No. CIV-03-158 ("the MDL proceeding"). Shortly thereafter, the court set the matter for status conference to discuss the case. A motion was then filed by other parties in the MDL proceeding seeking to abate adjudication of the summary judgment motions of plaintiff and defendant. On August 30, 2004, the court granted the motion to abate and denied without prejudice to re-urging the summary judgment motions. The court also denied without prejudice plaintiff's second amended motion for class certification and defendant's motion to dismiss or to strike.

On September 15, 2005, plaintiffs filed a motion for administrative order regarding class notice, opt out deadline or other administrative matters. The court, on April 13, 2006, entered an order granting the motion. A class notice, agreed as to form by the parties, was approved by the court on May 8, 2006. Subsequently, on June 16, 2006, pursuant to the court's scheduling order in the MDL proceeding, defendant filed a motion for summary judgment and plaintiffs filed a motion for partial summary judgment. On June 28, 2006, plaintiffs filed a motion to approve a corrected class notice, which was granted by the court on June 30, 2006. The notice of class action was sent to:

> All persons who were residents of Alabama at any time during the period from October 16, 2001 to September 16, 2002, who received a letter from Fire Insurance Exchange stating that their homeowner's policy renewal notice when sent would reflect an increase in premium of fifty percent or more and did not also include a notice in compliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(a).

Ex. 1 to doc. no. 605. The notice advised the recipient of the reason for receiving the notice as follows:

> You have been sent this notice because the records of Fire Insurance Exchange show that it sent you a letter between October 16, 2001 and September 16, 2002, informing you that your homeowner's insurance renewal premium when sent would reflect an increase of fifty percent or more. This letter did not contain an adverse action notice pursuant to the FCRA, 15 U.S.C. § 1681m(a).

*Id.* The notice described the case as follows:

> This lawsuit contends that Fire Insurance Exchange violated a federal law, the Fair Credit Reporting Act, 15

> U.S.C. § 1681(m) ("FCRA") . . . The Plaintiff contends that Fire Insurance Exchange violated the FCRA by failing to send to its customers adverse action notices when it increased premiums of certain customers based in whole or in part on information in their credit report. Fire Insurance Exchange contends that no notice was required at the time it sent letters to class members alerting them that their premiums had been increased. Fire Insurance Exchange contends that adverse action requiring notice was not required until it actually billed class members for the premium increase.

*Id.* The parties, at the court's direction, advised the court in mid-January of 2007 that the class had received notice, that the time for request for exclusion from the class had expired and that there had been no requests for exclusion.

In Reynolds v. Hartford Fin. Serv. Group, 435 F.3d 1081 (9th Cir. 2006), the Ninth Circuit handed down a decision which addressed certain issues involving the FCRA in the insurance context. Some of the issues were relevant to this MDL proceeding. The decision was appealed; the United States Supreme Court granted certiorari on September 26, 2006. *See*, GEICO Gen. Ins. Co. v. Edo, 127 S.Ct. 36 (2006). The case was consolidated with another appeal, Safeco Ins. Co. of America v. Burr, 127 S.Ct. 36 (2006). The case was argued on January 16, 2007, and on June 4, 2007, the Supreme Court handed down its decision in Safeco Ins. Co. of America v. Burr, 127 S.Ct. 2201 (2007). On July 13, 2007, the court directed defendant to file a supplemental brief addressing Safeco and the impact, if any, on the case. On August 9, 2007, defendant filed its brief and plaintiffs responded to the brief on September 13, 2007.

Discussion

In its motion, defendant contends that summary judgment is appropriate as to plaintiffs' claims for three reasons. First, it contends that plaintiffs cannot establish an FCRA violation. Defendant asserts that it was not required to send an FCRA notice with its letter advising of the fifty percent premium increase. According to defendant, at the time of the letter, it had not taken adverse action with respect to any insured so as to trigger the statutory notice. Defendant contends that a § 1681m(a) notice was not required until it sent the renewal premium packet, which contained the premium bill. Second, defendant contends that even if plaintiffs can establish an FCRA violation, plaintiffs cannot demonstrate that defendant "willfully" violated the FCRA. Defendant asserts that it sent the subject letter to comply with the Alabama Deputy Commissioner of Insurance's directive. It did not intend the letter to serve any purpose other than to comply with the directive. Third, defendant contends that plaintiffs cannot establish their claim for negligent violation of the FCRA because they have no evidence of actual damages resulting from defendant's alleged failure to provide a timely FCRA notice.

Plaintiffs argue that defendant is not entitled to summary judgment even if the court were to find that defendant was not required to send an FCRA notice at the time it sent the letter advising of the fifty percent premium increase. Plaintiffs contend that defendant violated FCRA by failing to send a proper FCRA notice with the policy renewal packet. Plaintiffs, in response to defendant's motion (and in support of their summary judgment motion), specifically adopt the arguments of the plaintiffs in the Corl, Mobbs and Watts action in this MDL proceeding regarding the failure of defendant's notices to comply with the FCRA. Plaintiffs contend that they have alleged in their Second Amended Complaint that defendant failed to properly notify

plaintiffs of adverse action taken in regard to their insurance premiums based in whole or in part on information contained in their consumer credit reports. Therefore, they contend that their claims should proceed regardless of how the court rules on whether defendant violated FCRA by failing to send the statutory notice with the letter advising of the fifty percent premium increase. They further contend that the court should grant summary judgment in their favor because defendant violated the FCRA by sending the non-compliant notice accompanying the policy renewal packet.

Plaintiffs assert that defendant was required to provide contemporaneous notice of its adverse action and that defendant did not provide such notice when it sent the letter advising plaintiffs of the fifty percent premium increase. Plaintiffs contend that the decision by defendant to place plaintiffs into a class of higher premiums based on information in their credit reports was not a preliminary internal decision, as argued by defendant. According to plaintiffs, the letter sent by defendant unequivocally stated that defendant was increasing its premiums by at least fifty percent. Plaintiffs assert that defendant provided no conditional language about the premium increase. Plaintiffs contend that defendant had made a final decision that plaintiffs' premiums were increasing at the time of the initial letter and that because defendant had taken adverse action as to plaintiffs at that time, it was required to give the FCRA notice.

As to defendant's willful violation of the FCRA, plaintiffs also adopt the arguments of plaintiffs in the Corl, Watts and Mobbs action.

In supplemental briefing, defendant contends that <u>Safeco</u> compels a finding that it did not violate the FCRA, or at a minimum, that it did not willfully violate the FCRA. According to defendant, its decision to send an FCRA notice with its renewal packet was an objectively reasonable interpretation of the FCRA.

Case 5:03-cv-00158-F   Document 842   Filed 11/29/07   Page 10 of 14

Plaintiffs argue that defendant's contention that no adverse action was taken until the renewal premium bill was sent is not a reasonable interpretation of the FCRA. Plaintiffs assert that defendant took adverse action when it made the decision in the underwriting process to increase the charge for plaintiffs' premiums based upon their consumer reports. Nothing in the statute, plaintiffs argue, suggests that adverse action does not occur until the renewal packet is sent to the policyholder. Plaintiffs contend that withholding notice until the renewal package is sent effectively denies the consumer the opportunity to effectuate any change if his consumer report contains errors.

<u>Notice Accompanying Renewal Packet</u>

At the outset, the court concludes that plaintiffs have not alleged an FCRA claim against defendant on the basis of the notice sent to policyholders with the homeowners policy renewal packet. Although the Second Amended Complaint (doc. no. 240) alleges that defendant failed to "properly" notify plaintiff of adverse action, *see*, ¶ 7, and that "proper" disclosure was not made in accordance with the FCRA, *see*, ¶¶ 15, 17, the court concludes that those allegations do not encompass a claim that the notice sent with the renewal packet did not comply with the FCRA. It is clear to the court that the Second Amended Complaint alleges an FCRA violation by defendant as to defendant's failure to send an FCRA notice with the letter advising of the fifty percent premium increase. That letter is specifically referred to and is attached as an exhibit to the Second Amended Complaint. The subsequent notice which accompanied the renewal packet is not attached to the pleading nor is it in any way referenced in the pleading. Moreover, the Honorable Edwin L. Nelson, in his memorandum opinion certifying the class in this case, stated:

> [plaintiff] does not contest that [defendant] sent the
> required disclosures on November 18, 2001. [citation to

> record]  Rather, [plaintiff] contends that the FCRA notice was sent too late to comply with the Act.  He contends that the notice should have been sent with the initial letter notifying the policy holders of the increase in premiums (the November 1, 2001 letter).

Braxton, 209 F.R.D. at 658.  The class was certified to consist of only persons who had received the letter advising of the increase in premiums.  Plaintiff did not challenge Judge Nelson's finding or the class as certified.  Class certification was affirmed by the Eleventh Circuit.  Although plaintiff thereafter attempted to expand the class and the theory of the case with the filing of a second amended motion for class certification, this court denied the motion without prejudice to re-urging.  The motion was never refiled and plaintiffs never sought to amend their complaint.  It is also significant that the class notice actually sent to the class members indicates, as recited above, that the claim alleged against defendant involves defendant's failure to comply with the FCRA in its sending of the initial letter.  The court concludes that the plaintiffs in this action have not alleged an FCRA claim involving the notice sent with the renewal packet and that, especially in the present procedural context, it is too late to amend the complaint to allege such a claim.  *See*, Duncan v. Manager, Dept. of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005) (untimeliness alone is adequate reason to refuse leave to amend).

Timing of Notice

The court now turns to the claim alleged in this case, that is, whether defendant willfully or negligently failed to comply with the FCRA by not sending an FCRA notice with the letter advising of the premium increase.  As previously discussed, defendant contends that it was not required to comply with FCRA when it sent the letter because it had not taken adverse action against plaintiffs. Defendant asserts that

11

no notice was required until it sent plaintiffs the renewal packet which contained the renewal premium bill. Plaintiffs, on the other hand, contend that defendant violated the FCRA by not sending the FCRA notice with the letter because it had already made a determination to place plaintiffs in a class of insureds receiving higher premiums based on information in their credit reports. Based upon the statutory language and relevant authorities, the court holds that defendant was not required to send plaintiff an FCRA notice until it sent plaintiffs their renewal premium bills because defendant did not "take any adverse action" with respect to the plaintiffs until it actually charged them a higher premium for their homeowner's insurance, *i.e.*, billed them for a higher premium.

In the FCRA, Congress expressly authorized the use of credit reports in insurance underwriting. A report can be used to determine a consumer's eligibility for . . . (A) . . . insurance to be used primarily for personal, family, or household purposes . . . .'" 15 U.S.C. § 1681a(d). A credit reporting agency can send a report to "one it believes . . . (C) intends to use the information in connection with the underwriting of insurance involving the consumer. . . ." 15 U.S.C. § 1681b(a)(3)(C). One using a credit report need only give notice "[i]f [that] person takes any adverse action with respect to [a] consumer that is based in whole or in part on any information contained in [the] consumer report." 15 U.S.C. § 1681m(a). The purpose of the notice is to allow the customer, if he or she chooses, to check his or her report for inaccuracies and correct any errors. In the insurance context, "adverse action" is defined by the FCRA as "a denial or cancellation of, <u>an increase in any charge for</u>, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance . . . ." 15 U.S.C. § 1681a(k)(1)(B)(i) (emphasis added).

The court finds that defendant did not take adverse action, that is, increase the charge for plaintiffs' homeowners insurance until it billed them for a higher premium. The court finds that defendant's internal analysis to determine which insureds were to receive the letter advising of the premium increase did not amount to "tak[ing]" adverse action against the insureds. The court concludes that the notice obligation under § 1681m(a) was not triggered until the increased charge was actually billed to the policyholder. Only at that point did the defendant take adverse action.

While the court's decision is dictated by the plain language of the relevant provisions of the FCRA, the court is also persuaded by decisions of other courts which have considered the meaning of the term "takes" in § 1681m(a) and the question of whether a preliminary internal decision amounts to taking adverse action. *See,* Razilov v. Nationwide Mutual Insurance Co., 242 F. Supp. 2d 977, 988 (D. Or. 2003) ("Applying this plain-meaning, dictionary definition, a person 'takes' an adverse action when the person does or performs the action. Carrying that meaning to the statutory definition of 'adverse action,' then, a person 'takes' an adverse action in connection with insurance when the person denies, cancels, increases in price, or reduces or changes adversely the terms or amount of insurance based on information in a consumer credit report."), *abrogated on other grounds by* Reynolds v. Hartford Fin. Serv. Group, Inc., 435 F.3d 1081 (9th Cir. 2006); *judgment reversed by* Safeco Ins. Co. of America v. Burr, 127 S.Ct. 2201 (2007); Obabueki v. International Business Machines Corp., 145 F. Supp. 2d 371, 391-92 (S.D.N.Y. 2001) (a preliminary internal decision to rescind an offer of employment is insufficient to constitute adverse action under the FCRA as it relates to denials of employment), *aff'd*, 319 F.3d 87 (2nd Cir.), *cert. denied*, 540 U.S.940 (2003).

Remaining Issues

Because the court has concluded that defendant did not violate the FCRA in failing to send a FCRA notice with the initial letter to its policyholders, the court concludes that it need not address defendant's additional arguments in support of summary judgment. The court concludes that defendant's motion should be granted and plaintiffs' motion should be denied.

Conclusion

Accordingly, plaintiffs' Motion for Partial Summary Judgment (doc. no. 590) is **DENIED**, and Defendant's Motion for Summary Judgment (doc. no. 597) is **GRANTED**.

DATED November 29, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

Farmers MDL p040.wpd