# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: Farmers Insurance Co., Inc.,) | Western Dist. Case. No. CIV-03-158-F |
| FCRA Litigation, ) | |
| ) | MDL No. 1564 |
| Judge Friot ) | |
| ) | |
| ) | |
| ) | This Document Relates to |
| _____ ) | Corl, Watts & Mobbs |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, RESPONSE TO CLASS MEMBER OBJECTIONS, AND MEMORANDUM OF LAW IN SUPPORT IN SUPPORT OF FINAL APPROVAL

## TABLE OF CONTENTS

I.     SUMMARY OF THE MOTION ...................................................................1

II.    SUPPORTING EVIDENCE ......................................................................2

III.   SUMMARY OF THE CLASS ACTION .......................................................3

IV.    PROCEDURAL HISTORY ........................................................................5

     A. Consolidation of Related Cases ................................................................5

     B. Certification of the Class .........................................................................6

     C. Issues Addressed by Motions for Summary Judgment ...........................7

V.     SUMMARY OF THE SETTLEMENT AGREEMENT ...............................8

VI.    PRELIMINARY APPROVAL AND NOTICE TO THE CLASS ..............10

VII.   REACTION OF THE CLASS TO THE SETTLEMENT ..........................13

VIII.  THE SETTLEMENT SHOULD BE FINALLY APPROVED ...................14

     A. The Settlement was Fairly and Honestly Negotiated ............................15

     B. There Are Numerous Questions of Law And Fact,
        Placing the Ultimate Outcome of the Litigation in Doubt ....................18

     C. The Value of An Immediate Recovery Outweighs the Mere
        Possibility of Future Relief After Protracted And
        Expensive Litigation.............................................................................20

     D. The Opinions of Lead Plaintiffs, Lead Counsel and Liaison
        Counsel Support the Settlement ...........................................................23

IX.    PLAINTIFFS' RESPONSE TO OBJECTIONS AND OTHER
       COMMUNICATIONS RECEIVED FROM CLASS MEMBERS .............24

     A.     Introduction......................................................................................24

     B.     Argument .........................................................................................25

1.    Response to Objection by a Professional Objector ...............26

    (a)    Mr. Miller is a Professional Class Action Objector ...................................................26

    (b)    Response to Objection Regarding Possible Discovery .................................................29

    (c)    Response to Objection Regarding Appearance at Hearing ...............................................31

    (d)    Response to Objection Regarding Claims Procedure .................................................32

    (e)    Response to Objection Regarding Procedure for Attorneys' Fees and Costs .......................33

    (f)    Response to Objection Regarding the Amount of Attorneys' Fees and Costs .......................36

    (g)    Response to Objection Regarding Incentive Awards ...................................................37

2.    Response to Objections to Attorneys' Fees and Cost (Lahr and Vincent) ............................37

3.    Response to Objections to the Amount of Compensation (Bouchard and Lenzy) ...................39

4.    Response to Class Member Who Does "Not Want any Part of This Settlement" (Lacy) ............42

5.    Response to Class Members Who Do Not Understand the Settlement (Wood and the Corbins) .....43

6.    Response to Class Member Who Communicated a Complaint Unrelated to Issues in the Case (Buford) .............45

7.    Response to Unintelligible Class Member Communication (Ferguson) ..................................46

X.    CONCLUSION ...........................................................46

# TABLE OF AUTHORITIES

Page

**CASES**

*Abdallah v. Coca-Cola Co.*, 133 F. Supp.2d 1364 (N.D. Ga. 2001) ........................................... 31

*Barnes v. FleetBoston*, No. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) .......................................................................................................................... 27

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1989) .................................................. 26

*Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011) ...................................................................................................... 35

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) .......... 14

*Cousin v. Trans Union Corp.*, 246 F.3d 359, 372-75 (5th Cir. 2001) ......................................... 19

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) .................................................................................................... 10, 11, 13

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) .................................................................................. 31

*Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168 (11th Cir. 2008)..........19, 21

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, *12 (S.D. Fla. 2008) ................................................................................................................ 25

*Gittin v. KCI USA, Inc.*, NO. 09-CV-05843 RS 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011).. 35

*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir.1998) .................................................. 15

*Horton v. Leading Edge Mktg. Inc.*, No. 04-CV-00212-PSF-CBS, 2007 WL 2472046 (D. Colo. Aug. 28, 2007)........................................................................................................ 34

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, No. 10C2278, MDL 2147, --- F. Supp.2d ---, 2011 WL 2204584, at *33 (N.D. Ill. June 2, 2011) ............................................. 31

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d 164, 175 (S.D.N.Y. 2000)....... 25

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *1 (S.D. NY. July 11, 1007) ................................................................................................................................. 34

*In re Farmers Ins. Co., Inc.*, 406 Fed. Appx. 295 (10th Cir. Dec. 27, 2010) ............................... 38

*In re Farmers Ins. Co., Inc., FCRA Litigation*, 738 F.Supp.2d 1180, 1191-93 (W.D. Okla. 2010) ........................................................................................................................ 4, 8, 20, 42

*In re Farmers Ins. Co., Inc., FCRA Litigation*, 741 F.Supp.2d 1211 (W.D.Okla. 2010) .............. 6

*In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001)............................ 11, 13

*In re Integra Realty Resources, Inc.*, 354 F.3d 1246,1258, 1266 (10th Cir. 2004) (Integra II).. 14, 31, 32

*In re Lifelock, Inc. Mktg. & Sales Practices,* No. 08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. 2010) ...................................................................................................................... 35

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ................................. 35

*In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262 n.7 (E.D. Va. 2009)...................................... 34

*In re Motor Fuel Temp. Sales Practices Litig.*, 271 F.R.D. 263, 290 (D. Kan.  2010)................. 43

*In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F.Supp.2d 1133, 1138 (D. Colo. 2009) .............................................................................................................. 18, 20

*In re S. Ohio Correctional Facility,* 173 F.R.D. 205, 214 (S.D. Ohio 1997) .............................. 23

*Johnson v. City of Tulsa*, Not Reported in F.Supp.2d, 2003 WL 24015151, *8 (N.D. Okla. May 12, 2003) ....................................................................................................................... 17

*Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984) ........................... 14, 15, 23

*Laskey v. International Union*, 638 F. 2d 954, 957 (6th Cir. 1981) ............................................. 26

*Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005)................................................................................................... 18

*Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944 CVE FHM, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) ...................................................................................................... 34

*Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002) ................................................ 23

*Lucas v. Kmart Corp.,* 234 F.R.D. 688, 695 (D. Colo. 2006)..................................................... 23

*Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983) .............................................................. 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 70 S.Ct. 652 (1950)...... 11

*O'Keefe v. Mercedes-Benz U.S., LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003) .................... 27

*Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.*, 537 F.3d 1184 (10th Cir. 2008) .................................................................................................. 18

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186 (10th Cir.2002) ...................... 14

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L.Ed.2d 1045 (2007) ...................................................................................................................................... 19, 38

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp.2d 942, 973 (E.D. Tex. 2000) ......................... 27

*Snell v. Allianz Life Ins. Co. of N. Am.*, No. Civ. 97-2784 RLE, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000) ............................................................................................................ 27

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ......................................... 26

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) ........................................ 27

*Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988) .............................................................. 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom. ..... 17

*Watts, et al. v. Farmers Insurance Company, Inc.*, et al., No. 03-CV-4014 (W.D. Ark.) .............. 5

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D.Colo.1997) ............... 14, 15, 16, 17

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910) ................. 14

*Williams v. Sprint/United Mgmt. Co.*, No. Civ. 03-2200-JWL, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) ............................................................................................................ 25

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983) ....................................................... 23

## STATUTES

15 U.S.C. § 1681 ............................................................................................................................. 3

15 U.S.C. § 1681a(k)(1)(B)(i) .......................................................................................................... 3

15 U.S.C. § 1681m ........................................................................................................................... 7

15 U.S.C. § 1681m(a) ....................................................................................................................... 3

15 U.S.C. § 1681n(a) ...................................................................................................................... 40

36 Okla. Stat. §§ 332 & 900.1 ....................................................................................................... 43

## OTHER AUTHORITIES

4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) ..... 15

7B Charles Alan Wright & Arthur R. Miller ...................................................................... 23

Black's Law Dictionary 305 (8th ed. 2004 ....................................................................... 41

FEDERAL PRACTICE AND PROCEDURE § 1797.1 .............................................................. 23

Howard B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS § 11.48, at 11-116 (3d ed.
    1992) ............................................................................................................................ 23

Manual for Complex Litigation ......................................................................................... 36

MANUAL FOR COMPLEX LITIGATION, Third § 30.42 (1995) .......................................... 18

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................... 24, 34

FED. R. CIV. P. 23(c)(2)(B) .............................................................................................. 12

FED. R. CIV. P. 23(e)(1) .............................................................................................. 10, 11

Fed. R. Civ. P. Rule 23.1 ................................................................................................. 14

Fed. R. Civ. P. Rule 23(c)(3) ........................................................................................... 12

Plaintiffs Harry Corl, David L. Watts, Jr., and Donna S. Mobbs ("Plaintiffs") move for final approval of the proposed class action settlement on behalf of themselves and others similarly-situated throughout the country. The settlement reached with Defendants Farmers Group, Inc., Farmers Insurance Company, Inc., Farmers Insurance Exchange, Fire Underwriters Association and Mid-Century Insurance Company ("Defendants") is set forth in the *Settlement Agreement and Release of Claims* dated May 19, 2011 ("Settlement"), attached and submitted herewith as App. 1-52. Plaintiffs also request that the Court overrule the objections that have been raised to the Settlement. In support thereof, Plaintiffs respectfully show the Court as follows:

## I. SUMMARY OF THE MOTION

The Settlement was preliminarily approved by the Court on June 21, 2011. (Doc. No. 988). The Court also directed that notice of the Settlement be provided to the Class Members. (*Id.*). Notice has now been provided and Class Members have been afforded an opportunity to opt-out or object to the proposed settlement.

Because the Settlement is an excellent result for the Class, Plaintiffs, by and through court-appointed Class Counsel, now request the Court to grant final approval to the Settlement. The Settlement was fairly and honestly negotiated in the face of serious legal and factual questions that place the litigation's outcome in doubt. The immediate recovery is more valuable than the mere possibility of a more favorable outcome after further litigation. Plaintiffs and Class Counsel believe the settlement is fair, reasonable and adequate and respectfully request that the settlement be approved.

## II. SUPPORTING EVIDENCE

In addition to the pleadings, motions and exhibits on file in this case, the Court's prior orders and rulings from the bench, and arguments of counsel as set forth in the case transcripts, this motion is supported by the following:

| | |
|---|---|
| **App. 1 to 52** | Settlement Agreement |
| | Ex. 1  Proposed Final Order |
| | Ex. 2  Proposed Preliminary Approval Order |
| | Ex. 3  Proposed Notice |
| | Ex. 4  Claim Form |
| | Ex. 5  Credit Report Code Letter |
| | Ex. 6  Credit Educational Brochure |
| **App. 53 to 58** | Declaration of Plaintiff Corl |
| **App. 59 to 64** | Declaration of Plaintiff Watts |
| **App. 65 to 70** | Declaration of Plaintiff Mobbs |
| **App. 71 to 118** | Declaration of Richard E. Norman, Class Counsel |
| **App. 119 to 165** | Declaration of R. Martin Weber, Jr., Class Counsel |
| **App. 166 to 176** | Declaration of David W. Jones, Class Counsel |
| **App. 179 to 193** | Declaration of William B. Federman, Class Counsel |
| **App. 194 to 214** | Declaration of Scott Poynter |
| **App. 215 to 226** | Declaration of Christopher R. Johnson, Class Counsel |
| **App. 227 to 240** | Affidavit of Gary D. Corum, Class Counsel |
| **App. 241 to 244** | Affidavit of Nate Coulter, Class Counsel |
| **App. 245 to 250** | Affidavit of Stephen Engstrom, Class Counsel |
| **App. 251 to 256** | Affidavit of Shirley Jones, Class Counsel |
| **App. 257 to 259** | Declaration of David H. Burrow, Class Counsel |
| **App. 260 to 274** | Declaration of Joe K. Longley, Class Counsel |
| **App. 275 to 286** | Declaration of Philip Maxwell, Class Counsel |
| **App. 287 to 294** | Declaration of Stephen L. McCleery, Class Counsel |
| **App. 295 to 306** | Declaration of Earl Underwood, Class Counsel |
| **App. 307 to 332** | Declaration of David Donaldson, Class Counsel |
| **App. 333 to 337** | Declaration of Steven R. Davis |
| **App. 338 to 359** | Declaration of Evan Hendricks, retained expert |
| **App. 360 to 494** | MDL Docket Sheet |
| **App. 495 to 509** | Judgment, *Ashby v. Farmers Ins. Co. of Or.*, No. 01-1446-BR (D. Or.) |
| **App. 510 to 518** | Order Approving and Adopting Amended Settlement, Dismissing Consolidated Cases With Prejudice and Directing Entry of Final Judgment, *In Re: The Progressive Insurance* |

|                 | *Corporation Underwriting And Rating Practices Litigation* (*Dikeman*), NO. 1:03-cv-01519 MMP (N.D. Fla) |
| **App. 519 to 535** | Final Judgment and Order of Dismissal with Prejudice, *In re Allstate Fair Credit Reporting Act Litigation*, MDL No: 302-md-1457 (M.D. Tenn.) |
| **App. 536 to 615** | Stipulation of Settlement of Claims of Certain Plaintiffs, *In re Allstate Fair Credit Reporting Act Litigation*, MDL No: 302-md-1457 (M.D. Tenn.) |
| **App. 616 to 652** | Declaration of Mark Cohen, *In re Allstate Fair Credit Reporting Act Litigation*, MDL No: 302-md-1457 (M.D. Tenn.). |
| **App. 653 to 691** | Declaration of Jennifer Keough, Garden City Group |
| **App. 690 to 695** | Declaration of Kumaran Raghvan, Farmers Programming Manager |

## III. SUMMARY OF THE CLASS ACTION

This nationwide class action alleges that Defendants "willfully" violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. The FCRA requires, among other things, that "any person [who] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report" must notify the affected consumer. 15 U.S.C. § 1681m(a). The notice to the affected consumer must point out the adverse action, explain how to reach the consumer reporting agency that reported on the consumer's credit, and tell the consumer that he can get a free copy of the report and dispute its accuracy with the consumer reporting agency. *Id.* Adverse action taken by an insurer is "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance." 15 U.S.C. § 1681a(k)(1)(B)(i).

Plaintiffs allege that Defendants "used" consumer credit report information when determining how much to charge consumers (*i.e.,* Plaintiffs and the Class Members) for insurance policy premiums. (*See,* Plaintiffs' Consolidated and Amended Class Action Complaint ("Class Complaint"), Doc. No. 493); *see also In re Farmers Ins. Co., Inc., FCRA Litigation,* 738 F.Supp.2d 1180, 1191-93 (W.D. Okla. 2010) (discussing Defendants' use of credit information and premium pricing). Plaintiffs allege that Defendants took "adverse action" regarding the Plaintiffs and class members based on consumer credit report information and yet willfully failed to provide notice to the affected consumer of the adverse action as required by the FCRA. (Complaint, Doc. No. 493, at ¶ 73-80). Plaintiffs seek statutory damages, costs and attorneys' fees. (*Id.* at ¶ 81). Section 1681n(a) of the FCRA provides:

> Any person who **willfully** fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 ...
>
> * * *
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a) (emphasis supplied).

## IV. PROCEDURAL HISTORY

### A.    <u>Consolidation of Related Cases</u>

The proposed settlement includes a number of cases that were centralized before this Court for pretrial purposes by order of the Judicial Panel on Multidistrict Litigation on November 28, 2003.   The first action to be filed was *Watts, et al. v. Farmers Insurance Company, Inc.*, et al., No. 03-CV-4014 (W.D. Ark.) (the "*Watts* Action"), which was filed on February 12, 2003 in the Western District of Arkansas.   A month later, the initial complaint in *Mobbs v. Farmers Insurance Co.*, No. 03-CV-158F (W.D. Okla.) (the "*Mobbs* Action") was filed on March 7, 2003, in the Western District of Oklahoma. The initial complaint in *Corl, et al. v. Farmers Insurance Company, Inc.*, et al., No. 03-CV-456 (E.D. Ark.) (the "*Corl* Action") was filed on June 13, 2003, in the Eastern District of Arkansas.

On January 25, 2005, attorneys representing the plaintiffs in three of the transferred actions (*Corl, Watts*, and *Mobbs*) filed a Consolidated and Amended Class Action Complaint.   Thereafter, substantially all of the activity in the MDL was directed to the claims asserted in the *Corl, Watts*, and *Mobbs* Complaint (the "Class Action").

In addition to the *Mobbs* Action, the *Corl* Action, and the *Watts* Action, the cases initially coordinated and consolidated in MDL 1564 included *Barr v. Farmers Insurance Co., Inc. et al.*, No. 03-CV-297 (E.D. Ark.) (the "*Barr* Action"); *Braxton v. Fire Ins. Exch.*, No. 01-CV-3174 (N.D. Ala.) (the "*Braxton* Action"); *Clark, et al. v. Farmers Group, Inc. et al.*, No. 02-CV-427 (W.D. Tex.) (the "*Clark* Action"); *Davenport, et al. v. Illinois Farmers Ins. Co.*, No. 03-CV-1180 (D. Minn.) (the "*Davenport* Action");

*Mitchell v. Farmers Ins. Co., Inc., et al.*, NO. 03-CV-881(E.D. Ark.) (the "*Mitchell* Action"); *Ross v. Mid-Century Ins. Co.*, No. 03-CV-2904 (N.D. Ala.) (the "*Ross* Action"); and *Williams v. Farmers Insurance Group*, NO. 03-CV-70697 (E.D. Mich.) (the "*Williams* Action).

The Court dismissed the *Barr* Action, the *Braxton* Action, the *Mitchell* Action, and the *Ross* Action; the plaintiffs in the *Clark* Action and the *Williams* Action filed amended complaints with the Court, eliminating any class action allegations. The *Davenport* claims are pending settlement approval within this Court, and the Fairness Hearing in regard to that proposed class settlement will also be heard on September 29, 2011.

## B.   Certification of the Class

On April 13, 2006, the Court granted Plaintiffs' motion for class certification in the Class Action (the "First Class Certification Order"). (Doc. No. 568). On September 20, 2010, the Court granted in part and denied in part Plaintiffs' and Defendants' motions to amend the class definition, and redefined the class that was first certified in the First Class Certification Order (the "Second Class Certification Order") (Doc. No. 965; *In re Farmers Ins. Co., Inc., FCRA Litigation*, 741 F.Supp.2d 1211 (W.D.Okla. 2010)).

For purposes of the Settlement, the Settlement Class is the Class Certified by this Court in its Second Class Certification Order, dated September 10, 2010:

(1) All persons who purchased a new policy of automobile and/or homeowners insurance from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange and the premium charged for such policy was

calculated using a FARA or FPRA factor greater than the weighted average FARA or FPRA factor, and

(2) All persons who renewed a policy of automobile and/or homeowners insurance from Farmers Insurance Company, Inc., Mid-Century Insurance Company, Farmers Insurance Exchange, or Fire Insurance Exchange and the premium charged for such policy was greater than the premium charged for the immediately prior policy period and for whom one or more of the following occurred:

> (a) the first time a Farmers Auto Risk Assessment ("FARA") factor or Farmers Property Risk Assessment ("FPRA") factor was applied to the policyholder's policy (the "transition renewal"), the inverse of the policyholder's FARA or FPRA factor (1.0 divided by the policyholder's FARA or FPRA factor) is less than the base rate offset (1.0 plus the base rate offset percentage) applied at implementation; and/or

> (b) the renewal premium increase subsequent to transition renewal (the "subsequent renewal") was caused, in whole or in part, by a negative change in the policyholder's credit-based insurance score that resulted in application of a lower FARA or FPRA factor discount than was used to rate the policy on the immediately prior policy period, and

> who received a form designated as follows:

> 25-7535 (version dated 6-00); or

> 25-7581 (version dated 9-00); or

> 25-7585 (version dated 9-00).

Excluded from the class are: (1) defendants and all directors, officers, agents and employees of defendants; (2) claims by any person or entity who timely opts out of this proceeding; (3) all currently serving federal district court judges, their current spouses, and all persons (and their current spouses) within the third degree of consanguinity to such federal district court judges and spouses; and (4) any person who has given a valid release concerning the claims asserted in this suit.

## C.   **Issues Addressed by Motions for Summary Judgment.**

The parties filed competing motions for summary judgment regarding whether the adverse action notices sent by Defendants complied with the requirements of FCRA § 1681(m) as well as whether Defendants had "willfully" violated the FCRA. Following a

hearing on the motions, the Court set forth its ruling in a Minute Entry dated November 9, 2007:

> The court concludes that, in instances in which notice was required, the notice used by Farmers did not comply with Section 1681(m). The court also concludes that the evidence is so highly conflicting that the issue of "objective unreasonableness" [*i.e.*, whether Defendant's "willfully" failed to comply with the FCRA] is a fact issue which must be tried.

(Doc No. 840; *see also* Order dated March 10, 2008, Doc. No. 860 ("The determination of the ultimate issue of willfulness – inclusive of the subsidiary issues discussed above – will involve at least some matters triable as of right to a jury.").

A second round of cross-motions for summary judgment was addressed by the Court in *In re Farmers Ins. Co., Inc., FCRA Litigation*, 738 F.Supp.2d 1180 (W.D. Okla. 2010). In these motions, the parties extensively briefed a broad range of legal and factual issues, most arising out of affirmative defenses raised by Defendants. *Id.* The Court resolved several matters, such as issues concerning the treatment of "new-business insureds," the statute of limitations, and Constitutional challenges to the Plaintiffs' claims. *Id.* Although several of the issues for trial were somewhat narrowed, the primary liability issue—whether Defendant's conduct rose to the level of a "willful" failure to comply with the FCRA—remained to be decided.

## V. SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement requires that the Defendants:

• Provide notification to class members that their credit information was obtained by Farmers, and that adverse action was taken based upon their credit information (*See*

Declaration of Evan Hendricks, App. 347-348 (describing the benefits of this aspect of the settlement for Class Members).

• Provide Credit Report Educational Brochures that are designed and intended to educate class members about their rights under the Fair Credit Reporting Act, the role that credit information plays in their financial lives, and the importance of checking their credit reports to ensure that the records are accurate information (*See* Hendricks Decl., App. 348-349);

• Provide notification to Class Members, which also serves as a reminder, that they have the right to obtain a copy of their credit report and help through a Call Center (App. 349-350);

• Provide all Class Members the opportunity to easily obtain free current credit report (market value $10.50) at Defendants' expense for each Class Member who timely submits and completes a Claim Form. (App. 351-353). Given the settlement class size of 2,114,848 members, this settlement benefit alone amounts to $22,205,904 (App. 338);

• Provide a cash payment of $35 to each Class Member who makes a claim; downloads the free credit report; and attests in a simple on-line process that they have reviewed that credit report for accuracy. Given the settlement class size of 2,114,848 members, this settlement benefit amounts to $74,019,680 (App. 353-354);

• Pay Class Counsel's attorneys' fees and litigation costs. (Settlement Agreement ¶ 6.1). This element of the Settlement has a value of $8,000,000 (*Id.*);

● Pay costs of settlement administration. This element of the Settlement has a value of approximately $2,000,000 (Declaration of Jennifer Keough, Settlement Administrator, App. 662).

● Pay an incentive award not to exceed $5,000 for each Class Representative. (Settlement Agreement ¶ 6.2, App. 13). As there are three Plaintiffs, this element has a value of $15,000.

In exchange, the Settlement, and the judgment to be entered upon final approval, will release certain claims that any Plaintiff or Class Member (including spouses, assigns, heirs, executors, etc.) may have against the Defendants. (App. 10, Settlement Agreement ¶ 4.1). The Released Claims include all FCRA claims, and all violations resulting from or arising out of claims raised in the Class Action. (*Id.*).

## VI.   PRELIMINARY APPROVAL AND NOTICE TO THE CLASS

The Court granted preliminary approval of the proposed settlement on June 21, 2011 and directed that notice of the proposed settlement be provided to the Class. (Doc No. 988). Rule 23 requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the" proposed settlement. FED. R. CIV. P. 23(e)(1). "In addition to requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement." *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). "[T]his due process right does not require actual notice to each party intended to be bound by the adjudication of a representative action . . . [f]or due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether

the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id.* at 944 (holding that lack of timely, actual notice of settlement to some class plaintiffs did not render the overall notice scheme violative of due process or otherwise unfair); citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 70 S.Ct. 652 (1950) ("A construction of the Due Process Clause which would place impossible or impracticable obstacles in the way could not be justified."); *accord In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001) ("*Integra I*") (holding Rule 23 and Due Process requisites satisfied where the record indicated that only seventy-seven percent of class members actually received notice of the settlement).

The Court appointed Garden City Group as Settlement Administrator to administer the notice procedures and certain other aspects of the proposed settlement. (Doc No. 988). The Settlement Administrator has since published and disseminated notice in accordance with the notice plan approved by to the Court. *See* Decl. of Jennifer Keough, Settlement Administrator, App. 655-657.

An exemplar of the Class Notice is attached to the Keough Declaration, App. 663-684. The Class Notice sets forth: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under

Rule 23(c)(3).  The content of the Class Notice satisfied all requirements of FED. R. CIV. P. 23(c)(2)(B).

Pursuant to the notice program approved by the Court, each Class Member's last known address was checked through the National Change of Address Database, and the best available address was used for sending notice. (Decl. of Keough, App. 654-655; *see also* Settlement Agreement ¶ 2.2(B)).  Within the timeframe approved by the Court, notice has been mailed to Class Members at the best available address. (Decl. of Keough, App. 655-656; *see also* Settlement Agreement ¶ 2.2(A)).  As directed by the Court, the Settlement Administrator has also maintained a dedicated settlement website, at www.farmersfcrasettlement.com, which: (a) displays the Notice; (b) provides a toll-free, interactive voice response number whereby Class Members may update their mailing address and receive answers to frequently asked questions, the content of which will conform to the Notice approved by the Court; and (c) makes available for download the operative complaint in the Class Action, this Agreement, and any orders and other documents from the Court relating to this Agreement.  (Settlement Agreement ¶ 2.3).

With Court approval, the notice program initially approved by the Court was supplemented with additional address searching and re-mailing of notices in order to ensure that the maximum number of Class Members were reached.  (Decl. of Keough, App. 656).

At the conclusion of the Notice Program, 89% of the Class Members had been reached by direct-mailed notice.  (App. 657).  The Notice Program fully met, and exceeded, all Due Process concerns.  *DeJulius v. New Eng. Health Care Emples. Pension*

*Fund*, 429 F.3d 935 (10th Cir. 2005) (holding notice satisfied due process where significant majority of class members (over 70.7%) received notice prior to the final fairness hearing); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir.2001) ("*Integra I* ") (holding Rule 23 and Due Process requisites satisfied where the record indicated that only seventy-seven percent of class members actually received notice of the settlement).

## VII. REACTION OF THE CLASS TO THE SETTLEMENT

Out of more than two million Class Members, only ninety-three (93) have chosen to opt-out of the settlement (only 82 validly). (Decl. of  Weber, App. 127; Decl. of Keough, App. 659-660).  Only eleven (11) Class Members have filed written objections or letters or documents which could broadly be viewed as objections. (Decl. of Weber, App. 127).  The objections are addressed *infra* at Section IX.  Overall, less than 0.0048% of the total number of Class Members have expressed dissatisfaction with the Settlement through excluding themselves or objecting to the Settlement.

As of September 11, there were over 77,000 Class Members that have submitted claims to the Settlement Administrator.  (Decl. of Keough, App. 660-661).  The Claims Period remains open until December 28, 2011.  Just focusing on those Class Members who have responded in some way to the Settlement, an overwhelming percentage of Class Members have chosen to participate in the Settlement versus objecting or excluding themselves from the Settlement.

## VIII.   THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

Rule 23.1 of the Federal Rules of Civil Procedure provides that an action brought thereunder "shall not be dismissed or compromised without the approval of the court." The authority to approve a settlement of a class or derivative action is committed to the sound discretion of the trial court. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186 (10th Cir.2002). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In assessing whether the settlement is fair, reasonable and adequate, the Tenth Circuit has directed a trial court to consider:

(1)   whether the proposed settlement was fairly and honestly negotiated;

(2)   whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)   the judgment of the parties that the settlement is fair and reasonable.

*In re Integra Realty Resources, Inc., 354 F.3d 1246, 1266 (10th Cir. 2004) (Integra II); Rutter & Wilbanks Corp.*, 314 F.3d at 1188; *Jones*, 741 F.2d at 324.

A court determining whether to approve a class action settlement should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). "This is because the essence of settlement is compromise, and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D.Colo.1997), citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910). The compromise of complex litigation such as the present multi-district, nationwide class action is particularly

encouraged by the courts and favored by public policy. *See* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002). The object of settlement is to avoid, not confront, the determination of contested issues: therefore, the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Instead, courts have consistently held that the function of a judge reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate and reasonable, not to rewrite the settlement agreement. *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998). Because the settlement herein was fairly and honestly negotiated, serious legal and factual questions place the litigation's outcome in doubt, the immediate recovery is more valuable than the mere possibility of a more favorable outcome after further litigation, and Plaintiffs and Class Counsel believe the settlement is fair, reasonable adequate, the settlement should be finally approved.

A.    **The Settlement Was Fairly and Honestly Negotiated**

The first factor for the Court to consider in determining the "fairness" of the proposed settlement is "whether the proposed settlement agreement was fairly and honestly negotiated." *Jones*, 741 F.2d at 324. The fairness of the negotiating process is to be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983). For example, in *Wilkerson v. Martin Marietta Corp.*, the district court found that the proposed consent decree was fairly and honestly negotiated where "[t]he completeness and intensity of the

15

mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." 171 F.R.D. 273, 285 (D.Colo.1997).

As the Court is aware, this class action has been vigorously litigated for more than eight years. Case-dispositive motions, discovery disputes, class certification issues and trial management concerns were repeatedly addressed and thoroughly developed by both Plaintiffs and Defendants. The parties to this substantial multi-district, nationwide class action have been represented expertly and professionally by extremely experienced counsel on both sides.

In 2003, plaintiffs began this litigation by filing their original complaints, and then worked through the Judicial Panel for Multidistrict Litigation's procedures to have their actions consolidated and transferred to this Court in early 2004. After working with this Court in 2004 to provide structure to this litigation, Plaintiffs then filed their Consolidated and Amended Class Action Complaint on January 25, 2005. Throughout the litigation, Plaintiffs obtained from the Defendants and reviewed approximately 265,000 pages of documents, took twenty-three (23) depositions, tendered an additional ten (10) witnesses for deposition, and exchanged multiple discovery requests. (Decl. of Richard E. Norman, App. 75-76). The Settlement was achieved only after fact and expert discovery, summary judgment, and class certification were complete. Indeed, the parties fully litigated class certification and summary judgment issues—*not once but twice*. In addition, the Settlement was reached only after the similar *Ashby v. Farmers Ins. Co. of*

16

*Or.*, No. 01-1446-BR (D. Or.) (hereafter, "*Ashby*") case was tried to a jury verdict in the District of Oregon. (*See* App. 495-509, the Final Judgment in *Ashby*).

The Settlement follows not only years of sharply-contested litigation but also three, separate formal mediations before three different mediators: (i) an April 2006 session in Houston, Texas, before Judge Lawrence Irving; (ii) a September 2006 session in Newport Beach, California, before Judge Layn Phillips; and (iii) the successful session before Randall Wulff in Oakland, California, where the Settlement was reached in principle. (Decl. of Richard E. Norman, App. 76) Separate and apart from these formal sessions, counsel for the parties held extensive discussions in an effort to resolve this Class Action. *Id.*

There is absolutely no evidence of any collusion between the parties. In fact, the fairness of the negotiating process is undisputed. Unsurprisingly (given the history of this litigation as set out above), <u>no objection has been made to the fairness of negotiations</u>. *See Johnson v. City of Tulsa*, Not Reported in F.Supp.2d, 2003 WL 24015151, *8 (N.D. Okla. May 12, 2003) ("Most significantly, however, the Court finds that neither the FOP nor any member of the Plaintiff class has objected to the fairness of the negotiations."), citing *Wilkerson*, 171 F.R.D. at 284 (finding negotiations fair and honest where no objector alleged or advanced any facts or evidence of fraud, collusion, or overreaching with consent decree).

The Court may presume the settlement to be fair, adequate, and reasonable. *See e.g. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom., *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044,

125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting MANUAL FOR COMPLEX LITIGATION, Third § 30.42 (1995)). The first factor strongly favors approval of the Settlement.

**B.     There Are Numerous Questions of Law And Fact,
Placing the Ultimate Outcome of the Litigation in Doubt**

The next factor requires an examination of whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F.Supp.2d 1133, 1138 (D. Colo. 2009).

In the present case, the Class could only recover if a jury finds that the Defendants "willfully" failed to comply with the FCRA. The similar *Ashby* class action was tried and the jury determined in that case that Farmers Insurance Company of Oregon did not willfully violate the FCRA. The Judgment in *Ashby v. Farmers Ins. Co. of Or.*, No. 01-1446-BR (D. Or.), including the jury's answers, is attached hereto as App. 495-509; *see also, gen., Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.*, 537 F.3d 1184 (10th Cir. 2008) (affirming jury verdict that the defendant did not willfully violate the FCRA).

A jury finding that Defendants "willfully" violated the FCRA in the present case would also have to be upheld on appeal. *See, e.g., Cousin v. Trans Union Corp.*, 246 F.3d 359, 372-75 (5th Cir. 2001) (reversing and rendering for the defendant because evidence failed to establish willful violation of FCRA). As the Court is aware, beyond the question of fact, there are legal questions regarding the "willful" element, including disputes concerning the application of the decision in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 167 L.Ed.2d 1045 (2007) to the circumstances presented here.

In another similar FCRA class action case, a class settlement was approved involving violations of the same FCRA provisions by another insurer. In *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168 (11th Cir. 2008), affirming the approval of that settlement on appeal, the Eleventh Circuit focused on the risk and doubt surrounding the plaintiff's ability to prevail on the "willful" element:

> Although the plaintiffs sought statutory damages ranging between $100 and $1000, statutory damages are available only for willful violations of the FRCA. See 15 U.S.C. § 1681n(a). The district court found, after considering the testimony and evidence presented at the fairness hearing, that "'**willfulness' on the part of Progressive is seriously debatable and the agreed to settlement reflects that uncertainty.**" R. 359 at 5. After careful review of the record and the benefit of oral argument, we cannot say that the district court abused its discretion in approving the settlement agreement.

*Dikeman*, at **2 (emphasis supplied) (the trial court's final approval order in the *Dikeman/Progessive* case is attached as App. 510-518).

In the present case, the Court has already noted that "the evidence is so highly conflicting that the issue of 'objective unreasonableness' [i.e., whether Defendant's

"willfully" failed to comply with the FCRA] is a fact issue which must be tried." (Doc No. 840; see also Order dated March 10, 2008, Doc. No. 860 ("The determination of the ultimate issue of willfulness … will involve at least some matters triable as of right to a jury.").

Furthermore, beyond the "willful" issue, there are considerable other factual and legal issues placing the ultimate outcome of the litigation in doubt.  For example, numerous defenses raised by Defendants were not resolved by summary judgment and those that were resolved would almost certainly be challenged on appeal. *See, e.g. In re Farmers Ins. Co., Inc., FCRA Litigation*, 738 F. Supp.2d 1180 (W.D. Okla. 2010).

The court's findings in the *Qwest* case on this factor are equally applicable the present case:

> ***It is difficult to imagine that anyone familiar with this case could conclude that there are not serious questions of law and fact in this case, or that those issues do not put the ultimate outcome of the litigation in doubt*** … Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs. The risk that a jury would deny recovery to the plaintiffs is substantial. The settlement creates a certainty of some recovery, and eliminates the risk of no recovery if the litigation were pursued to trial. I conclude that this litigation presents serious and complex questions of law and fact that place the ultimate outcome of the litigation in doubt. ***This factor weighs in favor of approval of the settlement.***

*In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F. Supp. 2d  at 1138 (emphasis supplied).

## C.   The Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

Despite the very real presence of doubt and risk (discussed above regarding the second factor), the proposed settlement is worth at least $100 million for the Class.  (*See*

Hendricks Decl., App. 338-339). Among other benefits, each of the more than two million Class Members will have the opportunity to access and review at no cost their individual credit report and, in addition, to receive a cash payment of $35 after doing so. (App. 9-10, Settlement Agreement ¶ 3.1 and ¶ 3.2). Given the totality of circumstances, the class is better off receiving this compensation now as opposed to being compensated, if at all, only after the case is tried and all appeals are exhausted. If the case were to be litigated to a conclusion after trial and appeals, it could very likely be years before the final conclusion of this litigation which has already been pending for almost eight years. (*See* Weber Decl., App. 128-130). By contrast, the Settlement Agreement provides the Settlement Class with substantial, guaranteed, final and immediate relief.

The *Dikeman* class action alleged similar willful violations of the FCRA by the insurer Progressive. *See Dikeman*, 312 Fed. Appx. 168. The district court approved and the Eleventh Circuit affirmed a settlement which conferred the following benefits to class members: (1) changes to Progressive's adverse action notice policy; (2) one free copy of a consumer credit report and a PLUS® credit score, furnished by Experian; (3) a free copy of a corrected credit report, if a class member finds and corrects errors, along with Progressive's promise to allay Experian's expenses incurred by the statutory credit correction procedures; and (4) a $75-$225 *"premium credit"* for current and former Progressive policyholders *who can show that they would have received lower premiums* but for subsequently corrected errors in their credit reports. *See Dikeman*, 312 Fed. Appx. 168 . In other words, the settlement provided no cash to all class members. Instead, class members would only be eligible to receive a "premium credit" and then only those that

21

could establish "they would have received lower premiums but for subsequently corrected errors in their credit reports." *Id.*

Moreover, another FCRA class settlement that was extremely similar to the *Dikeman* settlement was also approved against the insurer Allstate. The trial court's judgment approving the class action settlement in *In re Allstate Fair Credit Reporting Act Litigation*, MDL No: 302-md-1457 (M.D. Tenn.) is attached at App. 519-535, and the settlement agreement in that case is attached at App. 536-615, As with the settlement in *Dikeman*, the class members in *Allstate* could potentially receive a "premium credit" but only if it was first established that they would have received lower premiums but for errors in their credit reports. (*See Allstate* Settlement, App. 549-555, at Section III(4), pp. 14-20). According to the plaintiff's own expert in *Allstate*, only about 24,000 (out of more than 700,000 total) class members could ever qualify for this "monetary damages" benefit of the settlement. (*See* "Declaration of Mark Cohen" filed by the plaintiff in *Allstate* in support of the settlement, attached as App. 616-652, at ¶ 59, pp. 27-28). These 24,000 or so class members would receive only a premium credit and not a cash payment unless they both establish eligibility under the terms of the settlement and their Allstate policy was no longer in force. (*See Allstate* Settlement, App. 552, at Section III(4)(b)(1), p. 17).

In contrast, the present settlement makes available a $35 cash payment for each of the more than two million class members. Class Members do not have to demonstrate they would have received lower premiums but for errors in their credit reports.  Class Members only need to timely submit a Claim Form and then verify they have reviewed

their credit report information. The value of an immediate recovery under the terms of the proposed settlement outweighs *the mere possibility* of future relief after protracted and expensive litigation. This factor clearly favors approval of the settlement.

## D.     The Opinions of Lead Plaintiffs, Lead Counsel and Liaison Counsel Support the Settlement

Finally, the Tenth Circuit has specifically directed a trial court to consider "the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324. With regard to this factor, a court should typically "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983); *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."); *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D.N.M. 2002) ("[The] trial court is entitled to rely upon the judgment of experienced counsel for the parties.... Indeed, the trial judge, absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel.") (citation omitted))

The fact that some class members object to a proposed settlement does not itself prevent a court from approving an agreement. *See* 7B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1797.1 (citations omitted); *see also In re S. Ohio Correctional Facility*, 173 F.R.D. 205, 214 (S.D. Ohio 1997) (citations omitted). A relatively small number of class members who object to a proposed settlement may, in fact, be an indication of the settlement's fairness. *See* Howard B. Newberg and Alba Conte, NEWBERG ON CLASS ACTIONS § 11.48, at 11-116 (3d ed. 1992).

In the present case, Lead Class Counsel—who have substantial experience in complex class action litigation—recommend approval of the Settlement and believe it represents an excellent result for the Settlement Class. (Declaration of Norman, App. 78-79; Declaration of Weber, App. 128-130).   The Plaintiffs/Class Representatives also approve of the settlement.   (Decl. of Corl, App. 53-58; Declaration of Watts, 59-64; Declaration of Mobbs, App. 65-70).  As with the first three factors, the fourth factor also strongly favors approval of the settlement.

For the foregoing reasons, this Settlement should receive final approval.

### IX.  PLAINTIFFS' RESPONSE TO OBJECTIONS AND OTHER COMMUNICATIONS RECEIVED FROM CLASS MEMBERS

Plaintiffs file this response to the objections and other communications filed by absent Class Members and respectfully show the Court as follows:

**A.      Introduction**

On May 20, 2011, pursuant to Fed. R. Civ. P. 23, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support. (Doc. 985.)  On June 21, 2011, the Court signed a Preliminarily Approval Order (Doc. 988) preliminarily approving the settlement set forth in the Settlement Agreement, directing that a Notice of Class Action Settlement (the "Notice") be provided to the Class Members, and setting deadlines leading up to a final fairness hearing to be held on September 29, 2011.   In the Preliminary Approval Order, the Court also established procedures for the presentation of any objections by Class Members to the final approval of the settlement.  To date, out of the Class of more than 2,000,000 policyholders, a mere

six (6) Class Members have filed objections. (*See* Doc. 996). Additionally, five (5) class members sent communications to Class Counsel which did not meet the technical requirements for an objection in the Preliminary Approval Order but which raised concerns about either the settlement or Defendants' conduct in general. (Doc. 997.)

Plaintiffs believe that the objections and concerns raised by these Class Members are unfounded. All but one arise from misunderstandings by laypersons as to the purpose of class action settlements, the rules that govern them, and/or the details of the settlement now before the Court. One is an effort by a professional objector seeking to delay the resolution of this litigation as a means to obtain an individual bounty. None of the objections or concerns warrants undoing the settlement or returning the parties to active litigation. The Court's Preliminary Approval Order was appropriate when entered, and nothing has changed since then.

## B.    <u>Argument</u>

A certain number of objections are to be expected in response to the settlement of any class action. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d 164, 175 (S.D.N.Y. 2000). A small number of objectors, however, is an indicator that a settlement is fair and adequate. *Id.*; *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, *12 (S.D. Fla. 2008) ("A low percentage of objections will confirm the reasonableness of a settlement and support its approval"); *Williams v. Sprint/United Mgmt. Co.*, No. Civ. 03-2200-JWL, 2007 WL 2694029, at *4 (D. Kan. Sept. 11, 2007) (noting that "a relatively small number of objectors can be taken as some indication that the class members as a group did not think the settlement was

unfair" (internal quotation omitted)).[1]  In this case, the fact that objections were submitted by less than 1/1000 of a percent of the Class is notable and favors approval of the settlement.  Moreover, not only does the absence of any significant number objections support final approval, but the nature of the objections themselves underscores the propriety of the Court's initial determination in preliminarily approving the settlement. The settlement drew one Class Member who is professional objector seeking personal gain; two Class Members questioning the amount of attorneys' fees and costs; two Class Members questioning the amount of compensation they are to receive; one Class Member who does "not want any part of this settlement"; three Class Members who do not understand the settlement; one Class member who complained about Farmers' conduct unrelated to the issues in the case; and one Class Member who submitted an unintelligible "personal note."  Each of these is addressed below.

### 1.  Response to Objection by a Professional Objector

#### (a)  Mr. Miller is a Professional Class Action Objector

An objection was submitted by Class Member Steve A. Miller.  (Doc. 966-1, at 1-8.)  Mr. is an attorney in Denver, Colorado.  He is also a professional class action objector.

---

[1] *See also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) (objections of 29 members of a settlement class of 281 – over 10 percent of the class – "strongly favors settlement"); *Laskey v. International Union*, 638 F. 2d 954, 957 (6th Cir. 1981) (presence of seven objections in a 109-member class should be considered in determining adequacy); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1989) (objections from 16% of the class constituted a "persuasive" showing that a settlement was adequate).

It is an indisputable fact that courts "are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz U.S., LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (labeling objectors "spoilers" when only twenty of 113,000 class members objected); *Barnes v. FleetBoston*, No. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal)."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp.2d 942, 973 (E.D. Tex. 2000) (noting that some objections "were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests"); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. Civ. 97-2784 RLE, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000) (noting that movants were "represented by 'professional objectors,' who are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements—not to assess their merits on some principled basis—but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process").

By any measure, Mr. Miller is a serial, professional objector. With little effort, Plaintiffs have identified at least nine class action cases in which Mr. Miller has filed objections, either in his individual capacity or as an attorney for alleged class members:

- Cause No. 2:07-ml-01897-DSF-AJW; *In re Mattel, Inc. Toy Lead Paint Litigation* (represented objector and appellant Chase A. Thompson)

- Cause No. SACV 05–1070 DOC (MLGx); *White v. Experian Information Solutions, Inc.*; United States District Court, Central District of California (representing objector and appellant Steven C. Signer)

- Master File No. 21 MC 92(SAS); *In re Initial Public Offering Securities Litigation*; United States District Court, Southern District of New York (was the named objector; was represented by Jeffrey Weinstein, another professional objector)

- *In re Cellphone Fee Termination Cases*; Court of Appeal, First District, Division 5, California; appeal denied (186 Cal.App.4th 1380, 113 Cal.Rptr.3d 510 (Cal. App. 1 Dist., 2010)) (represented objectors and appellants Ann Talley and John Talley)

- Cause No. C 05-03649 JW PVT; *In re CLRB Hanson Industries LLC v. Google, Inc.* (represented objectors Randy R. Lyons, Chase Thompson, Etech Digital Playroom, Inc., and Universal Pro Audio, LLC)

- MDL No. 1350, Civil Action No. 00-cv-4729; *TransUnion Privacy Litigation*; United States District Court for the Northern District of Illinois; (filed objection on behalf of Christi M. Copeland)

- Cause No. 2:05-ml-01671-CAS-VBK; *Reformulated Gasoline Antitrust and Patent Litigation*; United States District Court for the Central District of California (represented objector and appellant Leslie Yagar (Miller))

- Cause No. BC300142; *Fogel v. Farmers Group, Inc.*; Superior Court of California, Los Angeles (represents objectors Charmain Schuh and Marvin Brilliant)

- Cause No. 1:08-md-01982; In re Tyson Foods, Inc.; in the United States District Court for the Northern Division of Maryland (represented objector Shelagh Needham-Ward)

Weber Decl., App. 130-131.  It is through this lens that the Court should evaluate Mr.

Miller's objections.

### (b)     Response to Objection Regarding Possible Discovery

Without citing any authority, Mr. Miller objects to the Court-approved Notice on the grounds that it purportedly "threatens unnamed class members with depositions and written discovery should they submit an objection." (Doc. 996-1, at 3.) This objection is baseless.

In its Preliminary Approval Order, the Court stated, "Class Members who submit an objection may be deposed by Class Counsel and Defendants' Counsel and may be required to answer written discovery propounded by Class Counsel or Defendants' Counsel on an expedited basis." (Doc. 988, at 6.) This same statement was repeated in the Notice. (Doc. 985-1, at 42.) Contrary to Mr. Miller's unfounded complaint, the purpose of this provision is not to "discourage unnamed class member participation in the settlement approval process." (Doc. 996-1, at 3.) Rather, the purpose is to facilitate the approval process.

First, discovery may be used by the parties to determine whether an objector is a member of the Class. If for example, the parties were to receive an objection from an individual with a name that did not match the list of Class Members, they might want to take discovery to determine whether the individual is, in fact, a Class Member with standing to object.

In addition, discovery may be used to better understand the bases for an objector's contentions. If, for example, an objector were to claim that the settlement is inadequate because Class Counsel did not consider certain pertinent facts, the parties might want to discover what information the objector might possess to support those facts and to

29

ascertain what information or witnesses an objector may present at the final fairness hearing.

Finally, discovery may be used to determine the true motivations behind an objection. For example, the parties may want to discover whether the objector is truly motivated by a legitimate complaint or question about the settlement, or whether he or she is a professional objector merely looking for additional compensation.

In this case, the parties did not believe that taking discovery from any of the objectors was necessary to assist the Court in the final fairness hearing. First, all objectors are clearly class members. Moreover, the bases for their questions and concerns were reasonably apparent from the papers they submitted. Finally, Mr. Miller's status as a professional objector is well-known. Thus, because discovery was not necessary, Mr. Miller's expressed concern about an "adversarial relationship" between Class Counsel and an objector did not come to pass. (Doc. 996-1, at 3.)[2]

Requiring objectors to provide information in support of their objections is not a novel concept. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, No. 10C2278, MDL 2147, --- F. Supp.2d ---, 2011 WL 2204584, at *33 (N.D. Ill. June 2,

---

[2] Class Counsel notes that this purported potential for an "adversarial relationship" between Class Counsel and a legitimate objector is a red herring. First, under the Court's Preliminary Approval Order, discovery can be conducted by the Farmers Defendants, who are already in an adversarial relationship with the entire Class. Moreover, allowing the parties to obtain information in support of an objection is not, in and of itself, adversarial. Indeed, a party with a legitimate question or concern about the proposed settlement should not take issue with providing information that may assist the Court. It is the professional objector – seeking to stall the settlement for personal gain – who creates an adversarial relationship. It is, therefore, not surprising that Mr. Miller is the only Class Member to complain about the possibility of discovery.

2011) (holding that "class notice properly states that objectors may be subject to depositions"); *Abdallah v. Coca-Cola Co.*, 133 F. Supp.2d 1364 (N.D. Ga. 2001) (allowing defendant and class counsel to "conduct discovery of objectors, if any, from the time an objection is filed until forty-five (45) days after the deadline for filing objections"). Accordingly, Mr. Miller's objection should be overruled.

### (c)    Response to Objection Regarding Appearance at Hearing

Mr. Miller also objects to the Notice on the grounds that it purportedly "misleads unnamed class members into believing that merely filing a written objection, while not attending the fairness hearing, preserves the right to appeal." (Doc. 996-1, at 4.) Citing *In re Integra Realty Res., Inc.*, 354 F.3d 1246 (10th Cir. 2004), Mr. Miller states that "in this Circuit the law *seems* to be that an objector who has timely filed and served his or her written objection, but fails to attend the fairness hearing, waives his or her right to appeal under *Devlin v. Scardelletti*, 536 U.S. 1 (2002)." (*Id.* (emphasis added).) *Integra* states no such thing, seemingly or otherwise.

In *Devlin*, the Supreme Court did not require the filing of an objection and appearance at the hearing in order to have standing to appeal. Contrary to Mr. Miller's suggestion, the Tenth Circuit did not add that requirement in *Integra*. Rather, the court simply ruled that a class member did not have standing to appeal because he failed to comply with the district court's stated requirements for objecting. The court explained:

> The district court allowed class members to file comments on the settlement agreement in writing without making an appearance at the fairness hearing. However, it specified that in order to preserve a right to contest the approval of the settlement at the fairness hearing, a class

> member must file a Notice of Intention to Appear and Object. This requirement was included in the Notice of Proposed Class Settlement and Rights of Class Members that was mailed to all known class members.

*Integra,* 354 F.3d at 1258. Although the class member filed a written objection to settlement, he did not file notice of intention to appear and object, as required in notice of proposed class settlement. As such, he failed to take procedural steps necessary to have objected during fairness hearing, and thus lacked standing to appeal district court's approval of settlement. *Id.*

In this case, as stated in the Notice, objectors have the right to appear at the final fairness hearing and voice their concerns if they so choose. (*See* Doc. 985-1, at 42.) However, they are not required to do so. Unlike in *Integra*, this Court did not condition a valid objection on appearance at the final fairness hearing. In fact, the Notice specifically informed Class Members that "your attendance at the Fairness Hearing is not required…. If you submitted a written objection or comment, you do not have to come to the Fairness Hearing to talk about it." (*Id.*) Under these circumstances, there is simply no basis to support Mr. Miller's objection.

### (d)    Response to Objection Regarding Claims Procedure

Without citing any authority, Mr. Miller contends that "the claims process is unreasonable, designed to discourage claims." (Doc. 996-1, at 4.) According to Mr. Miller, "Defendants already know who among their insureds are entitled to claims." (*Id.*) Thus, "Defendants should be required to do the same with respect to the proposed \$35 per class member settlement, i.e. simply mail the settlement to each of their insureds to

whom Notices were mailed and then to any class member who did not receive Notice, but who is able to submit a bona fide Claim Form." (*Id.*) Mr. Miller is mistaken.

As discussed more fully in the Farmers Defendants' response to objections, the claims process is necessary to ensure that the correct individuals receive settlement benefits. The beginning of the class period goes back more than a decade (1999-2002). Thus, Class Member contact information is stale. The claims process provides a simple means of confirming class member identity, thereby reducing the number of misdirected payments and the potential for fraud.

Moreover, the claims process is straightforward and user-friendly. Class Members merely need to complete and mail back the simply worded claim form in the envelope provided to them. Thereafter, Class Member may review their credit report online and certify that they have done so online to receive a $35.00 check.

Mr. Miller offers no solution to the problem of confirming class member identity, nor does he explain how or why the claims process is unduly burdensome. His unsupported objection should be overruled.

> **(e)   Response to Objection Regarding Procedure for Attorneys' Fees and Costs**

Mr. Miller also objects to the procedure for awarding attorneys' fees and costs because the deadline to file objections was before the deadline for Class Counsel to file a motion for an award fees. (Doc. 996-1, at 4.) This objection is baseless.

Under the Preliminary Approval Order, the deadline for Class Members to file objections was August 29, 2011, and the deadline for filing briefs in support of final

approval of the settlement and award of attorneys' fees is September 19, 2011, with the final fairness hearing to be held on September 29, 2011. (*See* Doc. 988, at 4-6.) In his objection, Mr. Miller states that this procedure is "admittedly common in federal district courts throughout the country." (Doc. 996-1, at 4.) He is correct. Federal district courts both within and outside the Tenth Circuit have routinely approved this practice. *See, e.g., Horton v. Leading Edge Mktg. Inc.*, No. 04-CV-00212-PSF-CBS, 2007 WL 2472046 (D. Colo. Aug. 28, 2007) (approving procedure under which deadline to object proceeds deadline for filing fee application); *Lewis v. Wal-Mart Stores, Inc.*, No. 02-CV-0944 CVE FHM, 2006 WL 3505851, at *1 (N.D. Okla. Dec. 4, 2006) (notice complied with Rule 23(h) where "counsel mailed notice to the putative class members stating that counsel would seek one-third of the settlement proceeds as attorneys' fees"); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262 n.7 (E.D. Va. 2009) (in overruling objection that rule 23(h) was not satisfied where only amount of total fees to be sought was stated in the notice and the objection deadline was prior to the fee motion deadline, the court held that it is "confident that the Notice provided complies with Rule 23(h) and is in line with common practice with similar cases in other jurisdictions."); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *1 (S.D. NY. July 11, 1007) (finding notice sufficient under Rule 23(h) when maximum amount of fees was stated, and noting the fact that only one objected in this regard (as is the case here) was "strong indication that the information about attorneys' fees was presented in a 'reasonable manner'").

Mr. Miller is unable to cite any Tenth Circuit authority to the contrary. Thus, he is left to argue that this practice, which is admittedly followed throughout the country, has

"recently been overruled" by *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Even if *Mercury* was binding authority for this Court, which it is not, Mr. Miller misconstrues the scope of the holding in that case.

Since it was decided, federal district courts in the Ninth Circuit have limited *Mercury* to its facts. As explained in *Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS, 2011 WL 1467356 (N.D. Cal. Apr. 12, 2011):

> *Mercury* involved a common class fund, a percentage of which was allocated to attorney's fees. *Id.* at 990. Thus, the amount distributed to the attorneys directly diminished the amount received by the class, necessitating that the class be given an opportunity to examine and object to the attorneys' fee motion. *Id.* at 990-91.

*Id.* at *1-2 (noting that lack of a common fund that will be diminished by the amount distributed to attorneys "obviates the due process concerns highlighted by the *Mercury* court" and citing *In re Lifelock, Inc. Mktg. & Sales Practices,* No. 08-1977-MHM, 2010 WL 3715138, at *9 (D. Ariz. 2010)); *see also Gittin v. KCI USA, Inc.*, NO. 09-CV-05843 RS 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) (same).

In this case, unlike in *Mercury*, the settlement does not provide that Class Counsel will receive a percentage of the common benefit that is available to the Class Members. The amount that may be awarded to Class Counsel -- be it $8 million as requested or some lesser amount -- will neither diminish nor increase the amount received by the Class Members. Thus, even if the Court were inclined to accept Mr. Miller's invitation to look to Ninth Circuit authority, that authority shows that his objection is unfounded.

### (f)   Response to Objection Regarding the Amount of Attorneys' Fees and Costs

Mr. Miller contends that Class Counsel's proposed $8 million award for attorneys' fees and costs is "disproportionate." (Doc. 996-1, at 4.)   However, he offers no elaboration or explanation as to why such an award would be is inappropriate in this case. The reason for his silence is obvious:  Mr. Miller, as a professional objector, is well aware that the proposed award is fair and reasonable given the facts of the case, the procedural posture, the work performed over the last 8½ years, and the compensation obtained for the class.

Thus, having no objection to excessiveness *per se*, Mr. Miller is left again to complain about the procedure for awarding fees and costs.  Quoting Section 21.71 of the Manual for Complex Litigation, Mr. Miller states that "[i]t is common to delay a final assessment of the fee award and to withhold all or a substantial part of the fee until the distribution process is complete." (*Id.* at 5.)  However, he does not cite a single case in which this procedure has been followed or offer a justification for why it should be used in this case.  There is no justification.

At the final fairness hearing, the Court will have before it all facts necessary to evaluate an award of attorneys' fees and costs.  It will have the statute authorizing the award of fees.   It will have the evidence of the value of the benefits to be obtained by Class Members.  It will have evidence concerning all of the factors considered by the Tenth Circuit in awarding costs and fees.  Waiting until the claims period is over and

distribution is complete will serve only one purpose: Delay. While that may serve Mr. Miller's end goal, it is certainly not in the best interest of the class.

(g)     **Response to Objection Regarding Incentive Awards**

Finally, Mr. Miller objects to the request that the Court approve an incentive award not to exceed $5,000 for each Class Representative. The reasonableness of the proposed incentive awards is addressed in Plaintiffs' Motion for Incentive Award filed contemporaneously herewith. Thus, Plaintiffs will not dwell on the issue here. They simply note the irony in Mr. Miller objecting to the Class Representatives -- who provided discovery and sat for depositions -- receiving an award, while at the same time he angles for compensation and objects to discovery.

2.     **Response to Objections to Attorneys' Fees and Costs (Lahr and Vincent)**

Like Mr. Miller, two Class Members have objected to the amount of attorneys' fees and costs requested by Class Counsel. Unlike Mr. Miller, however, both at least explain the basis for their objection. For his part, Class Member Jeffrey Vincent states:

> Eight Million Dollars ($8,000,000.00) is too much money for the amount of work done, especially when compared to the amount of money given to the class. The lawyers should be required to give the class members fair notice of the time and expenses spent working on this case prior to any hearings.

(Doc. 996-1, at 12.)   Similarly, Class Member John Lahr states:

> I find these sums to be quite outrageous. I cannot imagine that attorneys can justify 16,000 hours of time on this straight-forward case. These fees go well beyond reasonable especially in light of the trivial amount ($35.00) proposed to be awarded to the injured parties.

(*Id.* at 11.)  These objections are misguided.

As the Court is aware, this litigation was anything but "straight-forward."  Since Plaintiffs filed their respective actions in various district courts in 2003, this litigation has seen:

- Proceedings before the Joint Panel for Multidistrict Litigation and consolidation in this Court;

- The filing and entry of nearly 1,000 documents on this Court's docket[3];

- The production of over 200,000 pages of documents and the taking of depositions across the country[4];

- Full briefing on class certification and dispositive motions;

- The ruling by the U.S. Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007), which considered and decided various issues of first impression concerning the FCRA;

- A second round of full briefing on class certification and dispositive motions based on the holdings in *Safeco*;

- A Petition to Appeal this Court's post-*Safeco* rulings to the Tenth Circuit, *In re Farmers Ins. Co., Inc.*, 406 Fed. Appx. 295 (10th Cir. Dec. 27, 2010);

- Three mediations in Orange County, CA; Houston, TX; and Oakland, CA; and

- A full trial on the merits in No. CV 01-1446-BR, *Ashby v. Farmers Ins. Co. of Or.*, in the U.S. District Court for the District of Oregon, in which the jury returned <u>a full defense verdict *on the identical Farmers FCRA notice at issue in this case*</u>.

---

[3] As of September 8, 2011, the ECF file for this action shows 996 documents. App. 360-494.

[4] Depositions in this case took place in Boston, MA; Washington, D.C.; Freehold, NJ; Chicago, IL; Little Rock, AR; Oklahoma City, OK; Texarkana, TX; Santa Fe, NM; Los Angeles, CA; Palo Alto, CA.

Plaintiffs and Class Counsel do not fault these Class Members, who obviously lack any real appreciation for the complexity of the case or the amount of work performed, for raising a question about fees and costs and requesting "fair notice of the time and expenses spent working on this case prior to any hearings." Class Counsel is happy to oblige. As described in Class Counsels' Motion for Attorneys' Fees and Costs, which is filed contemporaneously herewith and incorporated herein, throughout the last 8½ years, Class Counsel expended over 14,700 hours and $523,000 in costs and expenses prosecuting this matter without no guarantee of any compensation. For their efforts, Class Counsel has secured each class member the right to a free credit report and $35.00 – a total benefit to the Class of over $100,000,000. Hendricks Decl., App. 338-359.

As discussed extensively in the fee brief, the fee and cost request is 7.7% of the total benefit. This is well below the range of fees awarded in similar litigation in the Tenth Circuit, and calls for only a very modest multiplier which is also well below the range of fees awarded in similar litigation in the Tenth Circuit.

Under these circumstances, Class Counsel's fee and cost request is plainly reasonable. Accordingly, the objections of Messrs. Lahr and Vincent should be overruled.

### 3. Response to Objections to the Amount of Compensation (Bouchard and Lenzy)

Two Class Members have objected to the amount of compensation they are to receive in the settlement. Specifically, Bart Bouchard states:

I was insured with Farmers from September 28, 1999- September 28, 2002. After reading this information further, I feel as though I am in titled to more than the Thirty Five Dollars ($35.00). I feel as though I am in titled to what I have paid to them over all the years that I was insured with them.

(Doc 996-1, at 13.) Likewise, Esther Lenzy states:

I object to the amount being given out 53.00???

After paying 9000.00 and I did find my auto insurance full coverage I feel 5000.00 is adequate due to the millions of dollars settlement that my money paid for

I'm requesting that 5000.00 is my best offer your honor.

(*Id.* at 15.) Although it is not entirely clear from their one-page objections, it appears that Mr. Bouchard and Ms. Lenzy believe that they are entitled to either a full refund of all premiums paid to the Farmers Defendants or, at the very least, a substantial refund of thousands of dollars in premiums. What is clear is that these individuals do not understand the relief sought in this litigation or the nature of a compromise.

Through this litigation, Plaintiffs sought to recover statutory damages under Section 616 of the FCRA, which provides, in pertinent part:

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of-

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 ...

15 U.S.C. § 1681n(a). Importantly, Plaintiffs did not seek a return of premium paid or any other measure of actual damages.

Like all settlements, the proposed settlement before the Court represents a compromise. A compromise generally means that one receives something less than the total. *See* Black's Law Dictionary 305 (8th ed. 2004) ("an agreement for the settlement of a real or supposed claim in which *each party surrenders something* in concession to the other" (emphasis added)). Here, based on their collective knowledge, training, and experience, Class Counsel (in consultation with the Class Representatives) determined after considering, among other things, the history of the litigation, the voluminous discovery taken in the case, the Court's many rulings, and the results of the *Ashby* trial that it would be in the best interest of the Class to reach a settlement that would provide credit information and cash to Farmers policyholders who received one of the challenged FCRA notices, rather than insist upon the recovery of uncertain penalties and risk obtaining *no* recovery for the Class. Neither Mr. Bouchard nor Ms. Lenzy offers any credible basis to challenge that determination.

As discussed in the Motion for Final Approval, the settlement consideration is fair and reasonable. Indeed, given the result in *Ashby*, and given the fact that at two federal district courts previously approved nationwide class action settlement involving the same claims asserted here against different insurance companies in which little[5] or no[6] cash consideration was made available to class members, Class Counsel believes that the consideration they obtained is remarkable. Notably, neither Mr. Bouchard nor Ms. Lenzy

---

[5] *See* Section VIII(C), *supra*, discussing the *Allstate* settlement.

[6] *Id.*, discussing the *Progressive* settlement.

filed their own litigation in the last decade, nor opted out in this matter to go prosecute their own litigation. Neither explained why these other options were inadequate.

Simply stated, the compromise reached by the parties is not rendered unfair or unreasonable merely because the monetary amount Mr. Bouchard or Ms. Lenzy can recover under the proposed settlement is less than the total of what they might believe they were wrongly charged. Their objections should be overruled.

### 4. Response to Class Member Who Does "Not Want any Part of This Settlement" (Lacy)

One Class Member, Paul Antonio Lacy, states that he "adamantly disagree[s] with the proposed settlement because the monetary settlement and proposed attorney fees are not in the best interests of the Class as the costs will, in all probability, be passed directly or indirectly back to the Class." (Doc. 996-1, at 10.) As a result, Mr. Lacy claims that he does "not want any part of this settlement." (*Id.*)

Of course, if Mr. Lacy did not want any part of this settlement, he had the right to opt out. He did not. Instead, he has indicated that he wishes to appear at the final fairness hearing, presumably in an attempt to explain why it is unfair or inappropriate for "his insurance company" (*id.* at 9) to pay consideration to the Class which this Court has already concluded it did not comply with the FCRA.[7] He will not be able to do so.

Mr. Lacy's objection is primarily based on the assumption that the Farmers Defendants will simply pass the cost of the settlement back to policyholders in the form

---

[7] *See In re Farmers Ins. Co., Inc., FCRA Litig.*, 738 F. Supp.2d 1180, 1189 (W.D. Okla. 2010) ("In a hearing conducted on November 9, 2007, the court concluded that the adverse action notices at issue did not comply with the requirements of the FCRA.")

of increased premiums.  Mr. Lacy, however, is a resident of Oklahoma.  In Oklahoma insurance rates for property and automobile insurance are regulated by the Oklahoma Insurance Department and subject to review by the Insurance Commissioner.  36 Okla. Stat. §§ 332 & 900.1, *et seq*.  Therefore, it is unlikely that the Farmers Defendants could justify any rate increase based upon the financial impact of the proposed settlement. Moreover, setting aside regulatory oversight, insurance is a highly competitive business with many options available to consumers.  There is simply nothing to suggest that the Farmers Defendants would choose to increase rates, potentially driving off existing customers like Mr. Lacy and impacting their ability to attract new customers, simply to recover the cost of the settlement.  Even if the Defendants did so, Mr. Lacy would be free to purchase insurance from another company, as he has threatened to do in his objection. *See In re Motor Fuel Temp. Sales Practices Litig.*, 271 F.R.D. 263, 290 (D. Kan. 2010) (rejecting objection based on the argument that the defendant would adjust prices, noting that "the Court has no reason to believe that market pressures would allow it to do so" and that "if it did, class members would be free to purchase fuel from other vendors").

Mr. Lacy's concern is unfounded and, at best, amounts to speculation. Accordingly, the Court should overrule his objection.

### 5.   Response to Class Members Who Do Not Understand the Settlement (Wood and the Corbins)

Although they did not make proper objections, three Class Members sent communications to Class Counsel questioning the settlement based on what appears to be

a mistaken belief that they must pay for a credit report.  First, Class Member William

Wood states:

> The way I read this paperwork, suit was brought against Farmers Insurance,
> by you, because their company chose a way of setting premiums that
> required them to notify all their policy holders more clearly than they did.
> For this breach of faith, or law, your firm has gotten all class members a
> "code" to read one credit report from one credit reporting agency, plus the
> reimbursement check for the cost of said credit report.

> The law already allows all of us, class members or not, to review all three
> agencies' credit reports once a year for free!  Why do you feel your firm
> deserves eight million dollars for your efforts?  Sounds fishy to me.

(Doc. 997-1, at 8.)  Similarly, Class Members Kirk and Sandra Corbin state:

> I also read, the defendants will just get a CREDIT CHECK as the
> REWARD, which we have to pay for first, and summit the receipt ($35.00)
> to your office to get reimbursed.  In Ohio the Credit Reports are free, if any
> errors show up, Ohios' [sic] Credit Bureau of Columbus, will resolve them
> free.

(Doc. 997-1, at 5.)  Plainly stated, these Class Members do not understand the settlement

and the benefits they can receive.

Under the settlement, Class Members are not required to purchase a credit report.

Rather, as clearly set forth in the first three paragraphs of the Notice:

> Plaintiffs filed a lawsuit contending that Defendants violated the Fair Credit
> Reporting Act (FCRA) by not providing sufficient "notice of the adverse
> action."  Defendants deny these allegations.  The case has now been settled.

> The settlement provides for each eligible Class Member to receive a Credit
> Report Code which will allow Class Members to access and review, at no
> cost, their individual consumer credit report maintained by Equifax for
> accuracy.

> In addition, each Class Member who certifies online that they have reviewed their individual consumer credit report for errors and inaccuracies will receive a thirty-five dollar ($35.00) payment.

(Doc. 985-1, at 37.)   Thus, Class Members were told that they could review their individual Equifax credit report "at no cost" and that "in addition" they would receive a $35.00 payment if they simply certified on-line that they reviewed their credit report for errors and inaccuracies.   No one reading this Notice could reasonably conclude that they would have to pay for a credit report.

Given that their objections are based on a fundamental misunderstanding of the settlement, the Court should overrule the Wood and Corbin objections.

### 6.   Response to Class Member Who Communicated a Complaint Unrelated to Issues in the Case (Buford)

One Class Member, Mary Lou Buford, sent a communication to Class Counsel stating that she has "been the victim of Farmers Insurance Companies refusing to Pay, [sic] my claims; and credit reports each time I renewed my car insurance policies." (Doc. 997-1, at 9-10.)   The communication does not challenge the settlement or address any issues in the case.   Accordingly, Class Counsel does not believe that a response is required.[8]

---

[8] Class Counsel also tendered to the Court a similar communication from Priscilla Aragon taking issue with her Farmers premiums in general. *See* Doc 997-1, at 1-2. However, it appears that this communication was sent in connection with other litigation involving Farmers.   Accordingly, Class Counsel does not believe that a response is required.

**7.     Response to Unintelligible Class Member Communication (Ferguson)**

One Class Member, Lester Ferguson, returned a claim form with a "personal note" handwritten at the end.  (Doc. 997-1, at 4.)  This note does not meet the requirements for either an objection to the settlement or exclusion from the Class.  Moreover, it is difficult to read and unintelligible.  Accordingly, Class Counsel does not believe that a response is required.

## X.     CONCLUSION

After eight years of sharply-contested litigation, the parties have fairly and honestly negotiated a reasonable and adequate settlement. Given the serious legal and factual questions that place the litigation's outcome in doubt, the Settlement is an excellent result for the Class that provides an immediate recovery that is far is more valuable than the mere possibility of a more favorable outcome after further delay, expense and risk of continued litigation. Plaintiffs and Class Counsel believe the settlement is fair, reasonable and adequate and respectfully request that the Settlement be approved.

Plaintiffs and Class Counsel further request that all objections to final approval be overruled.

Dated: September 19, 2011.                    Respectfully Submitted,

                                              /s/ Richard E. Norman
                                              Richard E. Norman, pro hac vice
                                              CROWLEY NORMAN LLP
                                              3 Riverway, Ste. 1775
                                              Houston, TX 77506
                                              Telephone:  (713) 651-1771
                                              Facsimile:  (713) 651-1775

**ATTORNEYS FOR PLAINTIFFS**
**AND THE CLASS**

OF COUNSEL:

*CROWLEY NORMAN LLP*
R. Martin Weber, Jr.
3 Riverway, Ste. 1775
Houston, TX 77506
Telephone:  (713) 651-1771
Facsimile:  (713) 651-1775

*WILSON, ENGSTROM, CORUM & COULTER*
Gary D. Corum
Arkansas Bar No. 82038
Nate Coulter
Arkansas Bar No. 85034
Post Office Box 71
Little Rock, Arkansas 72203
Telephone:   501-375-6453
Facsimile:   501-375-5914

*BECK, REDDEN & SECREST, LLP*
David W. Jones
Texas State Bar No. 00790980
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone:   713-951-3700
Facsimile:   713-951-3720

*LAW OFFICES OF JOE K. LONGLEY*
Joe K. Longley
Texas State Bar No. 12542000
1609 Shoal Creek Blvd., Ste. 100
Austin, Texas 78701
Telephone:   800-792-4444
Facsimile:   512-477-4470

*LAW OFFICES OF DAVID H. BURROW*
David H. Burrow
Texas Bar No. 03468000
One Allen Center
500 Dallas St., Ste. 3450
Houston, Texas 77002
Telephone:   713-222-6333
Facsimile:   713-650-6333

*NIX, PATTERSON & ROACH, L.L.P*
Jeffrey J. Angelovich
Texas Bar No. 00786988
3600 N. Capital Texas Highway
Building B, Suite 350
Austin, Texas  78746
Telephone:   512-328-5336
Facsimile:   512-328-5332

*PATTON ROBERTS PLLC*
Richard A. Adams
Arkansas Bar No. 97036
2900 St. Michael Drive, Ste. 400
Texarkana, Texas 75503
Telephone:   903-334-7000
Facsimile:   903-334-7007

*EMERSON POYNTER, LLP*
Scott E. Poynter
Arkansas Bar No.  90077
The Museum Center
500 President Clinton Ave, Suite 305
Little Rock, Arkansas 72201
Telephone:   501-907-2555
Facsimile:   501-907-2556

*FEDERMAN & SHERWOOD*
William B. Federman
Oklahoma Bar No. 2853
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone:    405-235-1560
Facsimile:    405-239-2112

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing on the following named person(s) on the date indicated below by electronic service through the U.S. District Court of Oklahoma, Western Division CM/ECF system:

| | |
|---|---|
| Barnes H. Ellis<br>Stoel Rives, LLP<br>990 SW Fifth Avenue<br>Suite 2600<br>Portland, OR 97204 | Gary D. Corum<br>Wilson, Engstrom, Corum & Coulter<br>200 S Commerce, Suite 600<br>PO Box 1<br>Little Rock, AR 72203-0071 |
| Scott E. Poynter<br>Emerson Poynter, LLP<br>The Museum Center<br>500 President Clinton Ave., Suite 305<br>Little Rock, AR 72201 | William B. Federman<br>Federman & Sherwood<br>10205 N. Pennsylvania Ave.<br>Oklahoma City, OK 73120 |
| Earl P. Underwood<br>Law Offices of Earl P. Underwood<br>21 S. Second Street<br>PO Box 969<br>Fairhope, AL 36533 | |

Dated: September 19, 2011.

/s/ Richard E. Norman
Richard E. Norman